# LEAGUE v. TEXAS.

ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 137. Argued and submitted January 29, 1902.—Decided February 24, 1902.

A State may adopt new remedies for the collection of taxes, and apply those remedies to taxes already delinquent, without any violation of the Federal Constitution.

That in the new remedy in the case at bar, as well as in the change from the old to the new, there was no violation of the constitution of the State of Texas, is settled for this court by the decisions of the highest court of that State.

Whether the title on this case which passed by the sale was conditioned or absolute, the State may waive the rights obtained by such sale and prescribe the terms upon which it will waive them.

A delinquent taxpayer who fails to discharge his obligation to the State, compelling it to go into court to enforce payment of the taxes due on his land, has no ground of complaint because he is charged with the ordinary fees and expenses of a law suit.

The Fourteenth Amendment contains no prohibition of retrospective legislation as such, and therefore, now, as before, the mere fact that a statute is retroactive in its operation does not make it repugnant to the Federal Constitution.

On August 6, 1898, the State of Texas filed a petition in the district court of San Augustine County, Texas, averring that the defendant was justly indebted to the State of Texas and the county of San Augustine in the sum of $1305.87, on account of taxes, interest, penalties and costs due on certain described lands for the years 1884, 1885, 1886, 1887, 1888, 1889, 1890, 1891, 1892, 1894, 1895 and 1896. The prayer was for a recovery of the taxes, interest, etc., and for a decree establishing and enforcing a lien upon the several tracts for the amounts found due upon each. An answer was filed and a trial had, which resulted, on September 9, 1889, in a finding that there was due the State the amount claimed for taxes, etc., a decree that the State recover the amount thereof from the defendant, and adjudging a lien upon the several tracts therefor, and directing a foreclosure and sale. On appeal to the Court of Civil Appeals

the decree was modified by striking out the taxes of 1884, all penalties and the personal judgment against the defendant, leaving the decree to stand as a finding of the amount due for taxes subsequent to the year 1884, interest and costs, and a foreclosure of a lien therefor upon the several tracts. This modification reduced the amount of the recovery to $1232.77, with interest at 6 per cent from September 9, 1899, the date of the decree in the district court. On error to the Supreme Court of the State the decree of the Court of Civil Appeals was affirmed, 93 Texas, 553 ; whereupon this writ of error was sued out.

*Mr. F. Charles Hume* for plaintiff in error submitted on his brief.

*Mr. D. E. Simmons* for defendant in error.    *Mr. C. K. Bell* was on his brief.

Mr. Justice Brewer, after making the above statement, delivered the opinion of the court.

In 1897 the legislature of Texas passed an act for the collection by judicial proceedings of delinquent taxes upon real estate. Texas, General Laws, 1897, c. 103, p. 132. The contention of the defendant, now plaintiff in error, is that prior thereto the collection of taxes was enforced by an administrative sale made by the collector of taxes after January 1 of the succeeding year; that the State's lien for taxes was merged in the estate passed or vested by that sale ; that the status of the rights of the State or other purchaser was fixed by the sale and must depend upon the legality of the title acquired under the collector's deeds, and that any right of a purchaser at such sale, whether State or private individual, to revive or continue any lien for taxes must depend upon some statute existing at the time of the sale ; and that hence this act of the legislature providing for the collection of delinquent taxes by judicial proceedings was a violation of the constitutional guarantee of due process in so far as it avoided the legal effect of the prior administrative sale and directed a further and judicial sale with the rights attending thereon.

There is no pretence that the taxes levied for these several years were invalid, or that the proceedings up to and including the collector's sale were irregular.   On the contrary, the delinquent tax record in evidence, duly certified and filed, which by section 3 of the act is made *prima facie* evidence of the regularity of all prior proceedings and also that the amount of the tax against any real estate is a true and correct charge, showed taxes due as found by the court.   It does not appear that the lands were assessed to the defendant or that he was the owner of them at the time of the early assessments.   Indeed, he alleges in his answer that he acquired title about the year 1889, but does not allege that this title was from the State.   Apparently he had purchased from some individual who claimed title. His argument assumes that the taxes had not been paid and that the lands had been sold by the collector to the State.   The case, therefore, presented is one of a party, admitting that valid taxes have been duly levied on his property and have not been paid, who is contesting the manner in which the State shall collect them, and insisting that the only method which it can adopt for such collection is one which has hitherto proved ineffectual.

That a State may adopt new remedies for the collection of taxes and apply those remedies to taxes already delinquent, without any violation of the Federal Constitution, is not a matter of doubt.   A delinquent taxpayer has no vested right in an existing mode of collecting taxes.   There is no contract between him and the State that the latter will not vary the mode of collection.   Indeed, generally speaking, a party has no vested right in a mere matter of remedy; that is subject to legislative change.   And a new remedy may be resorted to unless in some of its special provisions a constitutional right of the debtor or obligor is infringed.   "There is no vested right in a mode of procedure.   Each succeeding legislature may establish a different one, providing only that in each are preserved the essential elements of protection."   *Backus* v. *Fort Street Union Depot Co.*, 169 U. S. 557, 570.   That in the new remedy in the case at bar, as well as in the change from the old to the new, there was no violation of the constitution of the State of Texas, is for

us settled by the decisions of its highest court. *West River Bridge Co.* v. *Dix*, 6 How. 507; *Bucher* v. *Cheshire Railroad Co.*, 125 U. S. 555; *Adams Express Co.* v. *Ohio*, 165 U. S. 194; *Long Island Water Supply Co.* v. *Brooklyn*, 166 U. S. 685.

Defendant further contends that interest, expenses and costs are included in the new remedy by judicial proceedings which were not provided for by the prior statutes in reference to collector's sales. The Court of Civil Appeals and the Supreme Court of the State dealt with this question in these ways. The latter, in its opinion, quoted the following averment from the sworn answer of the defendant:

"And for answer in this behalf, defendant denies all and singular the allegations of plaintiff's petition; and further answering, defendant shows that he purchased the lands described in plaintiff's petition and exhibits about the year 1889; that said lands have been sold by the collector of taxes of San Augustine County for 1884 taxes and for the taxes of subsequent years, and they have, in every instance, been bid in by the collector of taxes for the State of Texas, in obedience to the laws of the said State."

Upon this it observed that it had granted the writ of error upon a question of the validity of the charge for interest, and added:

"However, upon the point on which the writ was granted, we will say that the answer of the defendant sets up the sale of the lands for taxes and the purchase of them by the State, insisting that the State is bound by its purchase. No attack is made upon the sale nor upon any of the proceedings leading up to it, and it stands before the court, under the defendant's allegations, as a valid sale by which the title passed to the State. The State having acquired the title, had the power to waive its right, and in order to perfect the claim beyond all dispute, to foreclose its lien on the land as against the then claimant, and in doing so, had the authority to prescribe such terms as it deemed proper and just. The claimant of the lands being a party defendant, could have disclaimed any interest in them and might thus have escaped any cost for proceedings had after such disclaimer. The defendant chose not to pursue

this course, and he has no cause of complaint as the case stands before this court, because, by his own showing, he had no title to be affected by it, and depended solely upon the grace of the State for whatever he might get out of the lands."

The Court of Appeals said:

"The lands were forfeited to the State by the sale for the taxes of 1884, the forfeiture to become absolute in two years. The offer of the State is to waive this forfeiture and restore the land to the owner if he will only pay the taxes accruing since then and six per cent interest thereon, together with the costs which had been incurred in making the sale, and in making up the delinquent lists, and of the suit. The State has waived its right of forfeiture on condition that the taxes, with interest and costs, shall be enforced against the land. This it might do."

Whichever be the true view of the effect of the answer, (and, of course, so far as the two courts differ, we must accept the view expressed by the highest court of the State as controlling,) the same result will follow. Whether the title which passed by the sale was conditional or absolute, the State may waive the rights obtained by such sale and prescribe the terms upon which it will waive them. In the one view it waives the right to a forfeiture; in the other, the title acquired by the sale; and in either case the State may fix the conditions of its waiver.

The costs referred to are simply the ordinary expenses which attend proceedings of the character prescribed, to wit, compensation to the collector for preparing the delinquent list and certifying it to the commissioners; to the county attorney for conducting the suit; to the sheriff for selling the land, and to the district clerk for making the court records. There is no pretence that any separate charge is exorbitant or unreasonable. And if the State is compelled to resort to such proceedings for the collection of its taxes it may provide reasonable compensation for the officials charged with any duty in connection therewith, and incorporate the charges therefor as costs in the case. Liability for these costs and expenses can be avoided by payment of taxes, and a delinquent taxpayer, one who fails to discharge his obligations to the State, compelling it to go into court to enforce payment of the taxes due upon his land,

has no ground of complaint because he is charged with the ordinary fees and expenses of a law suit.

While the matter of interest stands upon a little different basis, yet, so far as the Federal Constitution is concerned, there is nothing to prevent its collection. The statute may be retroactive, but a statute of a State is not brought into conflict with the Federal Constitution by the mere fact that it is retroactive in its operation. In *Baltimore & Susquehanna Railroad Co.* v. *Nesbit,* 10 How. 395, 401, it was said:

"That there exists a general power in the state governments to enact retrospective or retroactive laws, is a point too well settled to admit of question at this day. The only limit upon this power in the States by the Federal Constitution, and therefore the only source of cognizance or control with respect to that power existing in this court, is the provision that these retrospective laws shall not be such as are technically *ex post facto*, or such as impair the obligation of contracts. Thus, in the case of *Watson et al.* v. *Mercer,* 8 Pet. 110, the court say: ' It is clear that this court has no right to pronounce an act of the state legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The Constitution of the United States does not prohibit the States from passing retrospective laws generally, but only *ex post facto* laws. Now, it has been solemnly settled by this court that the phrase *ex post facto* is not applicable to civil laws, but to penal and criminal laws.' For this position is cited the case of *Calder* v. *Bull,* already mentioned; of *Fletcher* v. *Peck,* 6 Cranch, 138 ; *Ogden* v. *Saunders,* 12 Wheat. 266, and *Satterlee* v. *Matthewson,* 2 Pet. 380."

This decision, it is true, was before the Fourteenth Amendment, and the restrictions placed by that amendment upon state action apply to retrospective as well as prospective legislation. But it contains no prohibition of retrospective legislation as such, and therefore now, as before, the mere fact that a statute is retroactive in its operation does not make it repugnant to the Federal Constitution.

As the State may, in the first instance, enact that taxes shall bear interest from the time they become due, so, without con-

flicting with any provision of the Federal Constitution, it may in like manner provide that taxes which have become delinquent shall bear interest from the time the delinquency commenced. This is adding no novel or extraordinary penalty, for interest is the ordinary incident to the non-payment of obligations.

We see nothing else in the record calling for notice, and, finding no error, the judgment of the Supreme Court of Texas is

*Affirmed.*