170 So.2d 500

**Charlie Lee WARD**

v.

**STATE.**

**6 Div. 989.**

Court of Appeals of Alabama.

Nov. 3, 1964.

On Denial of Rehearing Nov. 24, 1964.

Morel Montgomery, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and Mary Lee Stapp, Asst. Atty. Gen., for appellee.

CATES, Judge.

This is an appeal from a judgment that appellant is the father of an illegitimate child. He was also ordered to pay six dollars to the mother each week for the infant's support.

The sole question is what effect is to be given Act 295 of September 15, 1961, p. 2353,[1] which enlarged the duties of adjudicated fathers and lengthened the time before limitation.

We have here the following timetable:

1. The child was born October 9, 1960.

2. The Governor signed Act No. 295 September 15, 1961.

3. October 9, 1961, period of limitations under Code 1940, T. 6, § 7, could[2] have run [but Act No. 295 has repealed T. 6 in toto].

4. May 23, 1963, mother filed complaint in Juvenile and Domestic Relations Court of Jefferson County.

■ United States Constitution, Art. I, § 10, cl. 1, denying the states power to make ex post facto laws, applies to penal and criminal laws not to civil laws which affect private rights adversely.[3]

In Kentucky Union Co. v. Kentucky, 219 U.S. 140, 152, 31 S.Ct. 171, 177, 55 L.Ed. 131, Day, J., said:

"* * * But an *ex post facto* law and a retroactive law are entirely different things

"Laws of a retroactive nature, imposing taxes or providing remedies for their assessment and collection, and not impairing vested rights, are not forbidden by the Federal Constitution. League v. Texas, 184 U.S. 156, 46 L.Ed. 478, 22 Sup.Ct.Rep. 475. This court had occasion in a very early case to consider the meaning of an *ex post facto* law as the term is used in the Federal Constitution, prohibiting the states from passing any law of that character. Calder v. Bull, 3 Dall. 386–390, 1 L.Ed. 648–650. In that case it held that such laws, within the meaning of the Federal Constitution, had reference to criminal punishments, and did not include retrospective laws of a different character. * * *"

---

1. The title reads: "An Act To repeal in toto Title 6 (Bastardy) Code of Alabama, 1940; establishing procedure for determination of paternity of illegitimates, prescribing and defining the civil obligations of the father of an illegitimate child and establishing civil procedures for the enforcement of such obligations; pre-scribing a statute of limitations as to the time within which proceedings may be brought under this act."

2. "Could" is used because of the proviso in § 7 as to the effect of acknowledgment or support.

3. Calder v. Bull, 3 Dall. 386, 1 L.Ed. 648.

Unlike the Kiplingesque [4] ballad, Act No. 295 euphemizes by dropping the harsh and much abused noun "bastard" in favor of the more pleasant sounding polysyllabic "illegitimate." And as trespass was the fertile mother of actions so we now have another jural foundling on the court's doorstep.

## I.

The salient differences in the "new" law as contrasted with repealed Title 6 are:

1) Justices of the peace are ousted of jurisdiction.

2) The $100 per year for ten years limit of liability is done away with. The obligation now is in degree and extent as if the child were legitimate.

3) After judgment, the reputed father cannot be imprisoned to force payment; nor is bond for payment required.

4) The money may be ordered to be paid directly to the mother or another.

5) The period of limitation is raised from one to two years, the new law, § 9, retaining the provision "unless in the meantime, the reputed father * * * has supported said child."

■ We conclude that Act No. 295 is no ex post facto law within the meaning of either the State or Federal Constitutions. We arrive at this mainly because the former bastardy and the now "illegitimate" law are both civil. The new law seems wholly so.

> Under Constitution 1901, § 95, we find: " * * * the legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this state. * * *"

■ Briefly, this cannot apply here because the one year statute [at its shortest span] had not run on this case when the new law was put on the books. Moreover, there was some testimony, inarticulate and imprecise though it may have been as to when, that the defendant had paid the mother for the child's support. Also he had, after it was born, referred to it as his in the presence of third persons.

■ In view of the repealer of Title 6 being placed in the same act imposing more onerous terms, we find no intent to confer amnesty on the reputed father. Indeed, the intent to have an unbroken transition is inescapable.

The prohibition against impairing the obligation of contract is not pertinent. Had the defendant been under judgment and bond under the "old" law is a circumstance not before us.

Act No. 295 as applied here creates no new obligation. It increases the damages payable for the breach by doing away with the $100 a year, ten year maximum. We can see no vested right in penury.

The judgment below is

Affirmed.

## On Rehearing

CATES, Judge.

The appellant claims that, in boiling his case down to one issue, we have oversimplified. Perhaps subjectively he is right: our view is from the prospect of what should be written—though more is decided. Code 1940, T. 13, § 66.

Accordingly, we list below the appellant's claims of error done and our reasons to reject them:

■ 1. The statute requires the woman to reside in the county.

This is a matter of proof and not to be raised by demurrer. The trial judge, much as a Federal district judge,[5] makes up the

---

4. Pollock and Maitland, History of English Law, ii, 395: " * * * and it well may be that the divergence of English from continental law [as to disabilities from being filius nullius] is due to no deeper cause than the subjection of England to kings who proudly traced their descent from a mighty bastard."

5. Fed.Rules Civ.Proc. 16.

issues. § 2, Act No. 295.[6] Notice pleading in the originating complaint and summons and the right to particulars at the pretrial hearing protects the defendant. This is analytically nothing but enforced pleading in short.[7] Harrison, Cases on Alabama & Com. Law Pleading, 171.

**** 2. Next it is claimed that Code 1940, T. 34, § 90—the misdemeanor of non-support of a child—is an indirect criminal club to enforce this new civil action.

To this we must point out that the only matter cognizable under Act No. 295, which becomes res judicata under T. 34, § 90, is that of paternity of the child. Morgan v. State, 28 Ala.App. 241, 182 So. 466. Under the independent misdemeanor defined in § 90, the basic element is that the child be "then and there in destitute or necessitous" circumstances. Proof of the failure to pay the amount called for by the judgment under Act No. 295 would not show such destitute or necessitous circumstances. Moreover, the extent of the burden of persuasion is to a degree of reasonable satisfaction, whereas in all crimes it must go beyond a reasonable doubt.

3. "After being declared the father, he (appellant) is subject to prosecution and criminal punishment * * *".

True. What we have set out in reply to 2 above shows the difference between the civil and criminal proceeding. See also Law v. State, 238 Ala. 428, 191 So. 803, and Turner v. State, 39 Ala.App. 527, 104 So.2d 775.

**** 4. Evidence of supporting the child before expiry of two years from the birth of the child and within two years before complaint, tolls the running of the statute of limitations. § 9, Act No. 295.

**** 5. Act No. 295, § 9, does not require as proof to toll the statute of limita-

tions the formal acknowledgment requisite under T. 27, § 11, to legitimate the child. Such formulary act ends bastardy. Residing in a sort of semantic limbo, there can be in legal parlance acknowledged (as well as unacknowledged) bastards.

Application overruled.

---

6. "Section 2. * * * The court, on the appearance of the reputed father at the time and place set by the court for hearing such complaint, must, if demanded by the reputed father, first cause an issue to be made up, to ascertain whether he is the real father of the child or not. If the reputed father denies the truth of the complaint, the issue to be tried shall be 'guilty' or 'not guilty'. * * *"

7. Brinsfield, Pleading in Short by Consent, 1 Alabama Lawyer 372; Jones, Alabama Practice and Forms, § 1072.