Margaret MONSON, Laurel Monson, Lee Monson, a minor, by Melfred Monson, his father and guardian ad litem, and Melfred Monson, individually, Plaintiffs and Respondents,

v.

Melvin H. NELSON, as Administrator of the Estate of Richard E. Olson, deceased, Defendant and Appellant.

No. 8227.

Supreme Court of North Dakota.

Oct. 13, 1966.

Duffy & Bakken, Cooperstown, for plaintiffs and respondents.

Dale H. Jensen, Asst. Atty. Gen., Bismarck, and Gene C. Grindeland, Sp. Asst. Atty. Gen., Mayville, for defendant and appellant.

KNUDSON, Justice.

This is an appeal by the Attorney General of North Dakota on behalf of the North Dakota Unsatisfied Judgment Fund, from an Order for Payment of Judgment from Unsatisfied Judgment Fund made by the District Court of Griggs County in favor of the plaintiffs, Margaret Monson, Laurel Monson, Lee Monson, a minor by Melfred Monson, his father and guardian ad litem, and Melfred Monson, individually, and against the defendant Melvin H. Nelson, as administrator of the estate of Richard E. Olson, deceased.

This case arose out of an automobile accident which occurred October 20, 1962. Laurel Monson was the driver of an automobile in which Margaret Monson and Lee Monson were passengers. An automobile driven by Richard Olson struck the Monson vehicle, severely injuring its occupants. Richard Olson died from injuries received in the collision. Melvin H. Nelson was appointed administrator of the estate.

This action was commenced by the service of a summons and complaint on the defendant administrator on May 18, 1963. Upon the default of the defendant for failure to answer the complaint, the plaintiffs, on June 19, 1963, served on the Highway Commissioner and the Attorney General a Notice to Take Default Judgment. The matter was heard by the district court on July 23, 1963. The court found that the negligence of Richard Olson in the operation of his motor vehicle was the proximate cause of the injuries to the plaintiffs, and made his Order for Judgment on August 13, 1963. Pursuant to such Order the Judgment was entered by the Clerk of Court on August 21, 1963, awarding the plaintiffs the following amounts: $10,000.00 to Margaret Monson; $7,500.00 to Laurel Monson;

$2,500.00 to Lee Monson; and $4,163.42, together with costs and disbursements of $147.20, to Melfred Monson. The award to Melfred Monson was for medical and dental services and care incurred by him for the treatment of the injuries to Margaret, Laurel, and Lee Monson. An execution issued on this judgment was returned wholly unsatisfied by the sheriff of Griggs County on August 22, 1963. On the application of the plaintiffs the court made an order on September 9, 1963, for the payment of the judgment from the Unsatisfied Judgment Fund in the aggregate amount of $20,047.20, to each of the plaintiffs in the following limits: To Margaret Monson the sum of $8,224.83; to Laurel Monson the sum of $6,165.87; to Lee Monson the sum of $1,445.83; to Melfred Monson the sum of $4,163.42 and costs in the sum of $47.20; amounting to a total payment to said plaintiffs in the sum of $20,047.20.

The only issue raised by the Attorney General is whether the maximum amount payable from the Unsatisfied Judgment Fund in one accident is ten thousand dollars, as provided by § 39–17–07, N.D.C.C., or twenty thousand dollars, as provided by Chapter 282, § 2, of the 1963 Session Laws, amending § 39–17–07, in considering the amount payable in an accident involving bodily injury occurring before July 1, 1963.

Prior to the 1963 amendment, the pertinent part of § 39–17–07, supra, read as follows:

No order shall be made by the court directing the payment of more than five thousand dollars, exclusive of costs, in the case of a judgment resulting from bodily injury to, or the death of, one person in one accident, nor, subject to such limit of five thousand dollars for each person so injured or killed in one accident, shall an order be made directing the payment of judgments for more than ten thousand dollars, exclusive of costs, in cases arising out of one accident.
\* \* \*

The identical part of the statute, as amended by § 2 of Chapter 282, supra, reads as follows:

No order shall be made by the court directing the payment of more than ten thousand dollars, exclusive of costs, in the case of a judgment resulting from bodily injury to, or the death of, one person in one accident, nor, subject to such limit of ten thousand dollars for each person so injured or killed in one accident, shall an order be made directing the payment of judgments for more than twenty thousand dollars, exclusive of costs, in cases arising out of one accident.
\* \* \*

The effect of the amendment was to increase the maximum amount recoverable from the Unsatisfied Judgment Fund from five thousand dollars for each person and ten thousand dollars in one accident, to ten thousand dollars for each person and twenty thousand dollars in one accident.

The Attorney General, representing the Unsatisfied Judgment Fund, argues that the judgment in this case was *rendered* against the defendant as of June 8, 1963, the date he came in default for failure to answer the complaint. His position is that all judicial acts were completed prior to July 1, 1963, by the doctrine of relation back. He contends that the subsequent acts of the court of determining the amount of the damages, the order for judgment, the entry of judgment, and the order to pay out of the Fund, were merely procedural, and related back to June 8, 1963, the date of default, a date prior to July 1, 1963, the date the amendment became effective, and therefore, the order for payment from the Unsatisfied Judgment Fund should have been limited to ten thousand dollars as provided by the statute before it was amended.

The contention of the appellant that the judgment was rendered and became final as of June 8, 1963, is untenable, being contrary to the rules of civil procedure and the decisions of this court.

Our rules of civil procedure provide that in all cases other than for a sum certain, the court shall require such proof as may be necessary to enable it to determine and grant the relief to which the plaintiff may be entitled before directing the entry of a default judgment by the clerk of court.

Rule 55, N.D.R.Civ.P., reads in part:

(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise appear and the fact is made to appear by affidavit or otherwise, the court may direct the clerk to enter an appropriate judgment by default in favor of the plaintiff and against the defendant as follows:

(1) When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the court * * * may direct the entry of judgment.

(2) In all other cases, the court, before directing the entry of judgment, shall require such proof as may be necessary to enable it to determine and grant the relief, if any, to which the plaintiff may be entitled. To this end, the court may:

1. Hear the evidence and assess the damages; * * *

This court, in discussing this question in Naderhoff v. Geo. Benz & Sons, 25 N.D. 165, 141 N.W. 501, at page 509, 47 L.R.A., N.S., 853, quoting from Tuttle v. Smith, 6 Abb. Pr. 329, said:

* * * The extent of the injury, or the amount of damages, is matter of judgment or legal discretion depending on extrinsic facts. It may be stated first in the complaint in round numbers, according to the claim and opinion of the plaintiff; but it must be determined upon evidence, or the proof of facts, which cannot be pleaded, but must be exhibited to the court, to enable it to make any clear, not to say just, disposition of the matter.

Here in the instant case the plaintiffs' claims are not for a sum certain or for a sum which can by computation be made certain, which is included in the first subdivision. To come within the first subdivision the claim must be for the recovery of a definite sum of money as such, and without calling upon the court to ascertain or adjudge anything but the existence and terms of the contract by which it is due, and from which the court may direct the entry of judgment without other proof.

■ However, the plaintiffs' claims in this action are not founded upon contract but upon tort for unliquidated damages for injuries sustained in an accident caused by the negligence of the defendant's decedent. Here the plaintiffs are required to prove the facts essential to their claim.

Where the action is in tort or for an unliquidated claim or amount, a default admits plaintiff's right to recover something, at least nominal damages, but does not admit the amount to which he is entitled, and there is no final judgment until the amount is ascertained, * * *

49 C.J.S. Judgments § 201c, p. 358 (1947).

■ This court has held that a judgment is not effective and does not become final until it is entered in the judgment book. In re Weber, 4 N.D. 119, 59 N.W. 523, 28 L.R.A. 621; Dibble v. Hanson, 17 N.D. 21, 114 N.W. 371, 16 Ann.Cas. 1210; Groth v. Ness, 65 N.D. 580, 260 N.W. 700.

■ A mere right to a default judgment does not constitute a final judgment under our rules. Before any judgment can have any force as such it must, in our opinion, be entered in the judgment book. Rule 58, N.D.R.Civ.P.

■ Rule 58, N.D.R.Civ.P., states that a judgment does not become effective until it is entered in the judgment book.

A judgment * * * upon failure to answer may be entered by the clerk upon the order of the court or the judge thereof, * * * The judgment in all cases shall be entered and signed by the clerk in the judgment book; this entry constitutes the entry of the judgment; and the judgment is not effective before such entry. * * *

"Judgment" is defined in our rules of civil procedure as follows:

"Judgment" as used in these rules includes a decree and any order from which an appeal lies. * * *

Rule 54(a), N.D.R.Civ.P.

■ Section 28–27–04, N.D.C.C. provides that "An appeal from a judgment may be taken within six months after the entry thereof by default," and in Rule 54(b) it is said "the court may direct the entry of a final judgment," and in Rule 54(c) "every final judgment shall grant the relief." Certainly the purpose and intent of our statutes and rules contemplate that a judgment becomes final only after the entry thereof in the judgment book, and that no theory of relation back is contemplated or intended by these statutes or rules. Therefore, in this case the judgment became final on August 21, 1963, when the judgment was entered by the clerk in the judgment book.

The respondents argue, in support of the payment from the Fund in the increased amounts allowed under the 1963 amendment to § 39–17–07, that

The controlling factor is the perfection of a judgment and the satisfaction of statutory requirements in order to proceed against the Fund after the judgment has been returned unsatisfied. If the Legislature had intended that causes of action accruing prior to the enactment of the legislation were not to be within the scope of the Unsatisfied Judgment Fund, such an exclusion would have been specifically enumerated in the statutes. To this end they are completely silent,

manifesting the intent that all judgments perfected after the enactment of the Unsatisfied Judgment Fund are entitled to payment out of the Fund as provided in section 39–17–07, as amended, upon compliance with other provisions of Chapter 39–17 and more specifically with Sections 39–17–03 and 39–17–04.

The respondents are correct in their contention that the statutory requirements must be met by first obtaining a final judgment and having it returned unsatisfied by the sheriff before the judgment creditor can proceed against the Fund. And here such requirements have been met by the respondents by obtaining a judgment which was rendered by the judge on August 21, 1963, and was entered in the judgment book on August 21, 1963.

However, the respondents are in error in their contention that

* * * If the Legislature had intended that causes of action accruing prior to the enactment of the legislation were not to be within the scope of the Unsatisfied Judgment Fund, such an exclusion would have been specifically enumerated in the statutes. To this end they are completely silent, manifesting the intent that all judgments perfected after the enactment of the Unsatisfied Judgment Fund are entitled to payment out of the Fund as provided by section 39–17–07, as amended, * * *.

On one hand the respondents contend that the amendment is prospective in its application, at least as to judgments obtained after the effective date of the amendment, and, on the other hand, the respondents contend that the amendment is retroactive in its application to causes of action arising before the effective date of the amendment, as the amendment does not specifically exclude claims arising from such causes of action.

■ The general rule of statutory construction that an act of the legislature is presumed to be prospective unless the legis-

lature clearly manifests a contrary intention is well established in this state by case law and statute. See Gimble v. Montana-Dakota Utilities Co., 77 N.D. 581, 44 N.W. 2d 198, and cases cited.

See also § 1–02–10, N.D.C.C.:

No part of this code is retroactive unless it is expressly declared to be so.

And in Great Northern Ry. Co. v. Severson, 78 N.D. 610, 50 N.W.2d 889, we said:

It is both a general and statutory rule of construction that the Legislature intends an act to operate prospectively only, unless the contrary * * * appears.

The question of statutory construction resolves itself to one of ascertaining and giving effect to the legislative intention. That intention must be sought, first, in the language of the statute, and if that language is ambiguous or of doubtful meaning, then resort may be had to certain extrinsic aids. A careful examination and consideration of the provisions of Chapter 39–17, N.D.C.C., and Chapter 282, Session Laws of 1963, amending § 39–17–07, leads us to the conclusion that the language of the amendment evinces a legislative intention that the amendment should operate prospectively only; and that there is no intention that the amendment should apply to judgments for damages for injuries sustained in an automobile accident occurring before the effective date of the amendment.

In speaking of the effect of an amendatory act (under a constitutional provision similar to § 64 of the Constitution of North Dakota) Sutherland says:

The amendment operates to repeal all of the section amended not embraced in the amended form. The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and *the new parts or the changed portions are not to be taken to have been the law at any time prior to the passage of the amended act. The change takes effect prospectively according to the general rule.*

1 Lewis, Sutherland, Stat. Const. pp. 442, 443, cited in Ford Motor Co. v. State, infra.

We find nothing in Chapter 282, supra, indicating any intention on the part of the legislature that the new provisions embodied in the act should be retroactive in its operation. The presumption is that the legislature intended that they should operate prospectively only. Ford Motor Co. v. State, 59 N.D. 792, 231 N.W. 883.

The respondents argue that since the amendment is silent as to causes of action arising prior to the effective date of the amendment the legislature intended that the amendment should apply to causes of action arising prior to the effective date of the amendment.

But this contention of the respondents is contrary to the general rule and statute on statutory construction that an act is presumed to be prospective unless the legislature clearly manifests a contrary intention. The statute being silent, it cannot be said that such silence constitutes an express declaration that the provisions of the amendment shall operate retroactively. Here there are no words or expressions in the amendment that it shall operate retroactively; therefore, the amendment increasing the limits of recovery from the Fund does not apply in this case where the claim or cause of action arose prior to the effective date of the amendment.

The respondents contend that the time of the recovery of the judgment is controlling rather than the time that the cause of action arose and "that all judgments perfected after the enactment of the Unsatisfied Judgment Fund are entitled to payment out of the Fund as provided in section 39–17–07, as amended * * *." Since the judgment

here was rendered after the effective date of the amendment, therefore, it is contended, recovery from the Fund should be had in the increased amounts provided by the amendment.

■ It cannot be seriously contended that the legislature in 1947, when the Unsatisfied Judgment Fund Act was first enacted, intended that judgments recovered after the effective date of the original Act upon causes of action arising before such effective date would be entitled to payment from the Fund. The amendment of the original Act increasing the limits of recovery in the same language as in the original Act indicates that it was used in the same sense and with the same effect in the amendment.

In construing statutes, the courts must take judicial notice of the history of the terms employed, and, where the statutes have been in existence for a long period of time, it must be presumed that the Legislature has at all times been aware of the meaning originally attaching to those terms.

Eddy v. Krekow, 54 N.D. 220, 209 N.W. 225, syllabus 1.

In our opinion the amendment does not express an intent by the express words nor by implication from its provisions of the legislature that the amendment shall be applied retroactively to claims accruing prior to the effective date of the amendment.

The order of the district court is reversed and the case remanded to the district court to enter an order in conformity with § 39-17-07, N.D.C.C., as it read prior to the 1963 amendment.

TEIGEN, C. J., and ERICKSTAD and STRUTZ, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.