**In the Interest of W. M. V.**

**Clarence O. OHLSEN, Director of Grand Forks County Social Service Board and ·A. M. V., Petitioners and Appellants,**

v.

**J. S., Respondent and Appellee.**

**Civ. No. 9445.**

Supreme Court of North Dakota.

July 13, 1978.

---

Jay H. Fiedler, of Letnes, Marshall & Hunter, Grand Forks, for petitioners and appellants; argued by Steven A. Hanson, Law Student.

Wayne K. Stenehjem and Thomas J. Kuchera, Grand Forks, for respondent and appellee; argued by Thomas Kuchera.

Sherrilynn Sperling Smith, Asst. Atty. Gen., Bismarck, for the Social Service Board of North Dakota, amicus curiae.

ERICKSTAD, Chief Justice.

This is an appeal by Clarence O. Ohlsen, director of the Grand Forks Social Service Board, as guardian ad litem for W. M. V., a minor, from a summary judgment granted by the Grand Forks County District Court dismissing his action to establish the legal paternity of W. M. V. and to obtain an order requiring the putative father, J. S., to contribute to the support of W. M. V.

W. M. V. was born out of wedlock on April 7, 1971. His mother has never been married and no man has formally acknowledged paternity of W. M. V. No action to determine paternity was ever commenced by the mother of W. M. V. On March 16, 1977, Clarence O. Ohlsen, as duly appointed guardian ad litem of W. M. V., commenced an action by service of process on J. S. to establish the legal paternity of W. M. V. and to obtain an order requiring J. S. to contribute to the support of W. M. V. This action was brought under the guidelines of Chapter 14–17, N.D.C.C., and therefore the mother of W. M. V., A. M. V., was joined as a party pursuant to Section 14–17–08, N.D. C.C.

In J. S.'s answer to the petition, among other things, he raised the affirmative defense that the action was barred by the statute of limitations and by laches. Subsequently, J. S. made a motion to dismiss the action based upon his allegation that the action was barred by the statute of limitations and by laches. A hearing on that motion was held on June 28, 1977, and on September 20, 1977, the district court issued a memorandum decision ordering that the motion to dismiss be granted. The district court, pursuant to Rule 12(c), N.D.R.Civ.P., treated the motion to dismiss as a motion for summary judgment under Rule 56, N.D. R.Civ.P., and, accordingly, a judgment was entered on October 24, 1977. The relevant part of that judgment reads:

"IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Respondent, [J. S.], be and is hereby granted a Judgment as a matter of law upon the determination that the applicable statute of limitations as provided in Chapter 32–36 of the North Dakota Century Code, had expired prior to the commencement of said action."

It is from this judgment that the guardian ad litem of W. M. V. appeals to this

court. He contends that the applicable law is the Uniform Parentage Act, Chapter 14–17, N.D.C.C., enacted in 1975 by the North Dakota Legislature (S.L.1975, Ch. 130) and not the statute of limitations contained in Chapter 32–36, N.D.C.C., which was repealed by the legislature in 1975 (S.L.1975, Ch. 130, § 28). He further contends that, even if Chapter 32–36, N.D.C.C., were applicable, its application in this case to dismiss the action would be a denial of due process and equal protection under both the United States Constitution and the State Constitution of North Dakota. Finally, the guardian ad litem contends that Section 32–36–09, N.D.C.C., even if applicable, was not intended by the legislature to be a limitation on the time for bringing an action to determine paternity, but only as a limitation on the time for bringing an action to enforce the support obligation of the father of a child born out of wedlock.

■ We agree with the guardian ad litem that the law to be applied in this case is Chapter 14–17, N.D.C.C., the Uniform Parentage Act, and that the action is, therefore, not barred by the statute of limitations contained in Chapter 32–36, N.D.C.C. Therefore, we will not discuss the constitutional issues raised by the guardian ad litem nor the proper interpretation of Section 32–36–09, N.D.C.C., as raised by the guardian ad litem in his final issue.

The putative father, J. S., contends that Chapter 14–17, N.D.C.C., cannot properly be applied in this case where W. M. V. was born on April 7, 1971, which is prior to the effective date of Chapter 14–17, N.D.C.C., July 1, 1975. He contends that we would violate Section 1–02–10, N.D.C.C., if we were to hold the Uniform Parentage Act applicable. That section reads:

"*Code not retroactive unless so declared.*—No part of this code is retroactive unless it is expressly declared to be so."

J. S. contends there is no language in Chapter 14–17, N.D.C.C., expressly declaring that Chapter 14–17, N.D.C.C., is to be applied retroactively, that is, no language in that chapter saying that it is to apply to persons born prior to the effective date of the act, and that, therefore, it cannot be so applied.

■ We disagree. We do not interpret Section 1–02–10, N.D.C.C., to require that a statute or act contain the word "retroactive" in order for it to be applied to facts occurring prior to the effective date of the statute or act. J. S. has cited no cases which require that explicit language, and we have found no such case in our own research. Instead, this court, in determining whether or not a statute could be applied retroactively, has looked at the language of the statute to determine the legislative intent.

In *Monson v. Nelson*, 145 N.W.2d 892 (N.D.1966), the question before us was whether or not an amendment to the Unsatisfied Judgment Fund Act was applicable to an accident which occurred prior to the effective date of the amendment. The appellees, in *Monson*, argued that if the legislature had intended to exclude accidents occurring prior to the effective date of the amendment from being affected by the amendment, such an exclusion would have been specifically enumerated. We rejected the argument that silence constituted an express declaration that the provisions of the amendment should operate retroactively. In Syl. ¶¶ 4, 5, and 6 of *Monson*, we stated the proper test to be applied to determine whether or not a statute can be applied retroactively.

"4. An act of the legislature is presumed to be prospective unless the legislature clearly manifests a contrary intention. § 1–02–10, N.D.C.C.

"5. An amendatory act, like other legislative enactments, does not take effect prior to the time of passage, and the new or changed portions have no application to prior transactions unless an intent to the contrary is expressed in the act or clearly implied from its provisions.

"6. Here the amendment does not express an intent by the legislature by express words nor by implication from its provisions that the amendment shall be

applied retroactively to claims accruing prior to the effective date of the amendment." 145 N.W.2d at 894.

In *Gimble v. Montana-Dakota Utilities Co.*, 77 N.D. 581, 44 N.W.2d 198 (1950), the question before this court was whether or not an amendment to the Workmen's Compensation Act was applicable to an injury which occurred prior to the effective date of the amendment. In Syl. ¶ 1 of that case, this court said:

"1. It is an established rule of statutory construction that a legislative act is presumed to be prospective unless the legislature clearly manifests a contrary intention." 77 N.D. at 581, 44 N.W.2d at 199.

In *Gimble*, this court looked at the language of the amendment and its legislative history and concluded that the legislature intended the amendment to be only prospective in its operation.

A third North Dakota case particularly relevant to the issue before us in this case is *In re Berg's Estate*, 72 N.D. 52, 4 N.W.2d 575 (1942). This court had before it the question of whether or not a statute enacted in 1917 was applicable to legitimate a child born prior to the effective date of the statute. This court examined the language of the new statute, especially the clause "but all children hereafter born in this state shall be deemed legitimate," and said:

"Thus considering the act as a whole in the light of its title, and giving consistent and harmonious effect to all its provisions, we must hold that the word 'child' as used in it means 'infant offspring' and so the operation of the statute was intended to be prospective only." 72 N.D. at 62, 4 N.W.2d at 580.

From these cases it is clear that, in order to determine whether or not the statute is retroactive, we must examine the language of the statute and determine whether or not the legislature clearly manifested an intention that the statute be retroactive in its operation. If this intention is not clearly manifested, either expressly or impliedly, then the statute is to be only prospective in its operation. *See Wolf v.*

*North Dakota Workmen's Compensation Bureau*, 267 N.W.2d 785 (N.D.1978), and *Young[s] v. White*, 267 N.W.2d 799 (N.D. 1978), for the most recent cases in which we analyzed specific statutes and concluded that they had only prospective application.

The language of the Uniform Parentage Act which manifests the intention of the legislature to apply the act retroactively, that is, to children born prior to the effective date of the act, is found in Section 14–17–06, N.D.C.C. The relevant part of that section provides:

"An action to determine the existence of the father and child relationship as to a child who has no presumed father under section 14–17–04 may not be brought *later than three years after the birth of the child, or later than three years after July 1, 1975, whichever is later*. However, an action brought by or on behalf of a child whose paternity has not been determined is not barred until three years after the child reaches the age of majority. . . ." (Emphasis added.) § 14–17–06, N.D.C.C.

If the legislature intended the act to apply only to children born after the effective date of the act, July 1, 1975, there would have been no need to add "or later than three years after July 1, 1975, whichever is later." Only when the child is born prior to July 1, 1975, could three years after July 1, 1975, be later than three years after the birth of the child. That part of the act thus clearly manifests the intention of the legislature to apply the act to children born prior to the effective date of the act. To interpret the statute in any other manner, it would be necessary to give the language "or later than three years after July 1, 1975, whichever is later" no effect. This we should not do, especially in light of Section 1–02–38(2), N.D.C.C., which reads:

"*Intentions in the enactment of statutes.*—In enacting a statute, it is presumed that:

\*      \*      \*      \*      \*      \*

2. The entire statute is intended to be effective."

J. S. relies on *C. L. W. v. M. J.*, 254 N.W.2d 446 (N.D.1977) to support his contention that the statute of limitations contained in Chapter 32–36, N.D.C.C., is applicable in this case because W. M. V. was born prior to the effective date of Chapter 14–17, N.D.C.C.

In *C. L. W.*, we held that a child born out of wedlock may bring an action to determine his right to inherit from his father after the father's death pursuant to Section 30.1–04–09(2)(b), N.D.C.C. (§ 2–109, U.P.C.). In that case, the child was born prior to the effective date of Chapter 14–17, N.D.C.C., and commenced the action after the death of his putative father in March of 1976. The parties in *C. L. W.* assumed that the law as to the rights of children born out of wedlock was the law in effect at the time of the child's birth. In dicta of that opinion, we said that the law to be applied in determining paternity is the law in existence at the time of the birth. As authority for that proposition, we cited *State v. Unterseher*, 255 N.W.2d 882 (N.D.1977).

*State v. Unterseher, supra* involved a paternity action initiated by the State of North Dakota. In that case the child was also born prior to the effective date of Chapter 14–17, N.D.C.C. However, the paternity action in *Unterseher* was commenced prior to the effective date of Chapter 14–17, N.D.C.C. One of the issues in that case was which law was applicable. We held that since the trial was held after the effective date of Chapter 14–17, N.D. C.C., the Rules of Evidence contained in Chapter 14–17, N.D.C.C., were applicable. We, however, limited the duration of the support obligation of the father, holding that the father only had to pay support until the child reached the age of 16. This limitation was mandated by Section 32–36–21, N.D.C.C., which we held to be applicable under the circumstances of that case.

What *Unterseher* stands for is that, except for matters of evidence, Chapter 14–17, N.D.C.C., cannot be retroactively applied to actions commenced prior to the effective date of the act. *Unterseher* did not deal with the situation where the action was commenced after the effective date of Chapter 14–17, N.D.C.C.

█ In light of this background, consistent with what we said in *C. L. W.*, the proper rule is that the law in effect at the time of a child's birth is applicable in paternity actions *unless the legislature manifests an intention to the contrary.* We have determined that the legislature manifested an intention in Chapter 14–17, N.D.C.C., that the Uniform Parentage Act be applied retroactively to children born prior to the effective date of the act, thus, the applicable law for this paternity action is the Uniform Parentage Act as set out in Chapter 14–17, N.D.C.C.

Other states have held their statutes dealing with the determination of paternity to be retroactive.[1] *See Thut v. Grant*, 281 A.2d 1 (Me.1971); *Ward v. State*, 42 Ala. App. 529, 170 So.2d 500 (1964), *cert. den.*, 277 Ala. 703, 170 So.2d 504 (1965); *Dunn v. Grisham*, 250 Miss. 74, 157 So.2d 766 (1963); *Wall v. Johnson*, 78 So.2d 371 (Fla.1955). While these cases may all be distinguishable from the case now before us because of the differences in the statutes and state constitutions involved, they do support the general proposition that acts dealing with the determination of paternity can be applied to children born prior to the effective date of the act.

It should be noted that the cases in other jurisdictions have differed on the extent of retroactivity to be given these paternity statutes. In *Ward v. State, supra*, and *Wall v. Johnson, supra*, the courts of Alabama and Florida stated that their new acts could not revive causes of action barred by the previous statute of limitations under the old

---

1. The Uniform Parentage Act has been adopted in five other states. They are California, Hawaii, Montana, Washington, and Wyoming. *Uniform Laws Annotated*, Master Ed. (West 1978). Only the act in Hawaii, however, contains the language that we rely on in this case to hold the act to be retroactive in its operation. We have found no cases from those jurisdictions dealing with the question of the retroactive effect to be given the Uniform Parentage Act.

act. The Alabama Court of Appeals stated that such limitation of the retroactive effect of the new act was mandated by the state constitution which stated that the legislature cannot revive any right or remedy which may have become barred by the lapse of time.

In this case, J. S. argued that the language in Section 14–17–06, N.D.C.C., "or later than three years after July 1, 1975, whichever is later," should be interpreted as a savings clause and thus only apply to cases where the cause of action had not been barred by the statute of limitations contained in Chapter 32–36, N.D.C.C., prior to the date of the repeal of Chapter 32–36, N.D.C.C. J. S. further asserted that, as an action to determine the paternity of W. M. V. under Chapter 32–36, N.D.C.C., was barred prior to the effective date of Chapter 14–17, N.D.C.C., W. M. V. is barred from bringing an action now under Chapter 14–17, N.D.C.C.

We disagree. We find no language in Chapter 14–17, N.D.C.C., which would limit the retroactive effect to be given the act. We thus construe Chapter 14–17, N.D.C.C., to be applicable for the determination of paternity of all children born out of wedlock irrespective of their date of birth for actions commenced after July 1, 1975. The statute of limitations which would apply to actions to determine paternity commenced after July 1, 1975, is, therefore, contained in Section 14–17–06, N.D.C.C., and not in Section 32–36–09, N.D.C.C.

In any event the legislature, in Chapter 14–17, N.D.C.C., created a new remedy for the child as distinguished from the mother or as otherwise provided in Chapter 32–36, N.D.C.C., and, accordingly, what we said in C. L. W. would not militate against the result we have reached today.

█ The fact that a statute is made to be retroactive to the extent of reviving causes of action previously barred does not necessarily make a statute unconstitutional. The United States Supreme Court in *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 315–16, 65 S.Ct. 1137, 1143, 89 L.Ed. 1628, 1636 (1945), said:

"The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life, liberty or property without due process of law. Some rules of law probably could not be changed retroactively without hardship and oppression, and this whether wise or unwise in their origin. Assuming that statutes of limitation like other types of legislation could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment."

This quotation was cited with approval by the United States Supreme Court as recently as 1976 in *International Union of Elec. Workers v. Robbins & Myers*, 429 U.S. 229, 243–44, 97 S.Ct. 441, 450, 50 L.Ed.2d 427, 439 (1976). *See also Davis v. Valley Distributing Co.*, 522 F.2d 827, 830 (9th Cir. 1975), *cert. den.*, 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977).

█ Holding that Chapter 14–17, N.D.C.C., is to be applied retroactively, even to the extent of reviving causes of action previously barred under Section 32–36–09, N.D.C.C., does not violate the due process clause of the United States Constitution or the North Dakota State Constitution. Putative fathers have no vested right in not being made a party to a paternity action. The obligation of a putative father to support his illegitimate child is a continuing duty. *Dunn v. Grisham, supra,* 250 Miss. at 82, 157 So.2d at 769. The fact that the legislature changes the time in which the paternity of an illegitimate child can be proved does not deprive the putative father of his right to due process of law. The putative father is still afforded the protection that he must be proved to be the father of the illegitimate child in a court of law.

In this case, therefore, as the action to determine paternity was commenced after July 1, 1975, the applicable law is the Uniform Parentage Act, Chapter 14–17, N.D.

C.C. Accordingly, the statute of limitations in Section 14–17–06, N.D.C.C., is applicable and not the limitation set out in the repealed Section 32–36–09, N.D.C.C. Section 14–17–06, N.D.C.C., provides that an action brought by or on behalf of the child, as in this case, is not barred until three years after the child reaches the age of majority. Therefore, the action by the guardian ad litem on behalf of W. M. V. is not barred by the applicable statute of limitations.

■ Our holding in this case that the statute of limitations found in Section 14–17–06, N.D.C.C., is applicable, is in accord with the policy we have previously stated in North Dakota that if there is a question of which statute of limitations applies, the longer term applies. *Sprecher v. Magstadt*, 213 N.W.2d 881, 883 (N.D.1973), *Adams v. Little Missouri Minerals Assn.*, 143 N.W.2d 659 (N.D.1966). Furthermore, although our holding in this appeal makes it unnecessary to discuss the constitutional issues raised by W. M. V., it should be noted that the result is consistent with the view we expressed in *In re Estate of Jensen*, 162 N.W.2d 861 (N.D.1968), where we found a statute which discriminated against illegitimate children in conjunction with the laws of intestate succession to be unconstitutional.

The summary judgment of the district court is therefore reversed, and the case is remanded to the district court for a trial on the merits.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.