In the Interest of the Minor Child:
B.G., DOB: 11–12–73.

**STARK COUNTY SOCIAL SERVICE BOARD, or any Successor County, Gary L. Sprynczynatyk, Director, Petitioner and Appellant,**

and

**R.J., Petitioner,**

v.

**R.R., Respondent and Appellee.**

Civ. No. 910040.

Supreme Court of North Dakota.

Nov. 20, 1991.

Diane F. Melbye (argued), Dickinson, for petitioner and appellant.

Robert A. Keogh (argued), of Keogh Law Office, Dickinson, for respondent and appellee.

MESCHKE, Justice.

The Stark County Social Service Board appealed from a judgment dismissing a paternity action against R.R. ["Richard," a pseudonym]. Because the trial court erroneously refused to apply a statutory presumption of paternity, we reverse and remand for a new trial.

In November 1973, R.J. ["Robin"] gave birth to B.G. ["Brian"]. In 1989, Robin applied for AFDC benefits and assigned her right to collect child support for Brian to the Stark County Social Service Board. The Board and Robin sued Richard on July 18, 1989, seeking a determination of paternity, child support, repayment of medical assistance, and future medical insurance coverage for Brian.

At trial, medical testimony indicated that conception could have occurred as early as mid-February 1973 or as late as April 1973. Robin testified that she could not remember specific dates on which she engaged in sexual intercourse with Richard, but that their relationship lasted into February or March of 1973. She testified that during the possible time of conception she had sexual intercourse only with Richard. Richard admitted sexual relations with Robin, but stated that they last engaged in sexual intercourse on January 29, 1973.

The parties submitted to genetic testing by two separate laboratories. One test showed a 99.96 percent probability that Richard is Brian's father; the second test showed a 99.86 percent probability of paternity. The trial court refused to instruct the jury on NDCC 14–17–04(1)(f), which creates a presumption of paternity if genetic tests show a statistical probability of parentage of ninety-five percent or higher.

The jury found that Richard is not Brian's natural father, and judgment was entered dismissing the action. The Board appealed, asserting that the trial court's refusal to apply the presumption was reversible error.

The Uniform Parentage Act, NDCC Ch. 14–17, was originally enacted in 1975. *See* 1975 N.D.Sess.Laws ch. 130. Subsection (1)(f) of NDCC 14–17–04, added by the 1989 Legislature, says:

*Presumption of paternity.*

1. A man is presumed to be the natural father of a child if:

\* \* \* \* \* \*

f. If genetic tests show that he is not excluded and the statistical probability of his parentage is ninety-five percent or higher.

1989 N.D.Sess.Laws ch. 148, § 29. This lawsuit was commenced shortly after the effective date of the 1989 amendment.

██ The trial court refused to apply the presumption, reasoning that to do so would be an improper retroactive application of the statute. The trial court relied upon *Reiling v. Bhattacharyya*, 276 N.W.2d 237 (N.D.1979), in which we declared that we will no longer distinguish between procedural and substantive statutes to determine retroactive application. *Reiling* said that, thereafter, all statutes would be applied prospectively, as NDCC 1–02–10 instructs, unless the Legislature expresses an intention to apply it retroactively.

> We conclude that § 1–02–10, N.D.C.C., applies to all statutes enacted by the legislature regardless of whether they are substantive or procedural. All statutes enacted by the legislature are to be applied prospectively, *i.e.*, they are to be applied only to causes of action that arise after the effective date of the statute, unless the legislature clearly expresses that they are to be applied retroactively.

*Reiling*, 276 N.W.2d at 240–241. We still adhere to the tenet that a statute will not apply retroactively unless the Legislature expresses an intent to do so. *See, e.g., Midwest Property Recovery, Inc. v. Job Service of North Dakota*, 475 N.W.2d 918, 921 (N.D.1991). Legislative intent determines the retroactive application of a statute.

Because this claim arose at the time of Brian's birth in 1973, Chapter 14–17 on parentage and the 1989 amendment to it on the presumption of paternity do not apply unless the Legislature indicated an intent that they be retroactive. Our decision in *In Interest of W.M.V.*, 268 N.W.2d 781

(N.D.1978), instructs us on the intent of the Legislature.

■ In *W.M.V.*, the Grand Forks County Social Service Board sought to apply Chapter 14–17 in a paternity action for a child born in 1973. After a careful examination of the statutory language, we concluded that the Legislature intended retroactive application of that Uniform Parentage Act:

> The language of the Uniform Parentage Act which manifests the intention of the legislature to apply the act retroactively, that is, to children born prior to the effective date of the act, is found in Section 14–17–06, N.D.C.C. The relevant part of that section provides:
>
>> "An action to determine the existence of the father and child relationship as to a child who has no presumed father under section 14–17–04 may not be brought *later than three years after the birth of the child, or later than three years after July 1, 1975, whichever is later.* However, an action brought by or on behalf of a child whose paternity has not been determined is not barred until three years after the child reaches the age of majority...." (Emphasis added.) § 14–17–06, N.D.C.C.
>
> If the legislature intended the act to apply only to children born after the effective date of the act, July 1, 1975, there would have been no need to add "or later than three years after July 1, 1975, whichever is later." Only when the child is born prior to July 1, 1975, could three years after July 1, 1975, be later than three years after the birth of the child. That part of the act thus clearly manifests the intention of the legislature to apply the act to children born prior to the effective date of the act. To interpret the statute in any other manner, it would be necessary to give the language "or later than three years after July 1, 1975, whichever is later" no effect. This we should not do, especially in light of Section 1–02–38(2), N.D.C.C., which reads:

> "*Intentions in the enactment of statutes.*—In enacting a statute, it is presumed that:
>
> \*     \*     \*     \*     \*     \*
>
> 2. The entire statute is intended to be effective."

*W.M.V.*, 268 N.W.2d at 784. We therefore concluded:

> We find no language in Chapter 14–17, N.D.C.C., which would limit the retroactive effect to be given the act. We thus construe Chapter 14–17, N.D.C.C., to be applicable for the determination of paternity of all children born out of wedlock irrespective of their date of birth for actions commenced after July 1, 1975.

*W.M.V.*, 268 N.W.2d at 786. Thus, Chapter 14–17 applies retroactively for the determination of paternity of all children, if the action to determine paternity commences after its enactment.

Richard argues that, even if Chapter 14–17 as originally enacted is retroactive, the 1989 amendment adding the presumption of paternity should not be so applied. We disagree.

■ The statutory language which demonstrates the Legislature's intent that the chapter applies retroactively is still contained in NDCC 14–17–06. When the Legislature enacted this amendment to NDCC 14–17–04 in 1989, the Legislature knew of our retroactive application of Chapter 14–17. The Legislature's long acquiescence in that application, and the failure to amend the statute, indicates a continuing legislative intent that Chapter 14–17 governs all paternity actions commenced after July 1, 1975, even if the child was born prior to that date. *See State v. Gefroh*, 458 N.W.2d 479, 484 (N.D.1990); 2A Sutherland Statutory Construction § 45.12 (4th ed. 1984). We therefore conclude that, by placing the 1989 amendment within Chapter 14–17, the Legislature expressed its intent that the amendment apply retroactively. We conclude that the presumption of paternity in NDCC 14–17–04(1)(f) applies retroactively, and that the trial court erred in refusing to apply it in this case.

Richard argues that, even if the court erred in refusing to apply the presumption, any such error was harmless. NDRCivP 61 states our harmless-error standard in civil cases:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Since this error affected the allocation of the burden of proof, it was not harmless.

Under NDREv 301(a), a presumption shifts the burden of proof to the party against whom it is directed. *Estate of Zins v. Zins*, 420 N.W.2d 729 (N.D.1988). Had the trial court instructed the jury on the applicable presumption in this case, Richard would have had the burden to prove that he was not Brian's natural father. Given the evidence in this case, we conclude that the error affected substantial rights of the parties and was prejudicial. *See State v. Zummach*, 467 N.W.2d 745, 747 (N.D.1991) (instruction which improperly placed burden upon defendant to disprove fair administration of a chemical test was prejudicial error). Therefore, failure to instruct the jury on the presumption of paternity requires a new trial.

We reverse the judgment of the trial court and remand for a new trial.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and LEVINE, JJ., concur.