[No. 16894-4-II.   Division Two.   March 1, 1995.]

PIERCE COUNTY, *Respondent*, v. CONSTANCE O'NEILL, *Appellant*.

*Constance O'Neill,* pro se.

*John W. Ladenburg, Prosecuting Attorney,* and *Lloyd Prentiss Fetterly, Deputy,* for respondent.

MORGAN, J. — Constance O'Neill appeals a judgment foreclosing a lien for unpaid sewer charges. We reverse.

At all times pertinent to this case, Pierce County operated a sewer utility, as permitted by RCW 36.94. O'Neill's residence was one to which the County provided service.

From July 1989 until March 31, 1990, the County charged $44.32 for 2 months of sewer service to a private residence. After April 1, 1990, it charged $38.90 for such service. It billed at the end of each 2-month period, with payment due 25 days later.

In July 1989, O'Neill was paid up. On August 7, 1989, the County billed $44.32 for June/July service. Payment was due by September 1, and O'Neill failed to pay on time.

From October 1989 through March 1990, the County sent O'Neill additional bills, according to its normal procedure. She made several payments, but was never completely paid up.

On April 2, 1990, the County billed $50.08. This reflected $44.32 for February/March service, plus interest and penalties related to late payment of the preceding bills. It brought O'Neill's balance to $148.30.

Also on April 2, the County's Department of Utilities sent a form letter saying that unless O'Neill brought her account current by April 30, the County would sue her. On May 2, a deputy prosecutor sent another form letter saying that unless O'Neill brought her account current by May 31, "additional charges of $250 will be added".[1]

On June 4, the County billed $46.22. This reflected $38.90 for April/May service, plus interest and penalties related to the late payment of the preceding bills. It brought O'Neill's balance to $194.52. O'Neill had until June 29 to pay the June 4 bill.

On June 11, 1990, the County added exactly $250 to O'Neill's account. It said $156.30 was for "title report cost",[2] and that $93.70 was for "foreclosure administrative cost".[3] Its explanation of the $93.70 is set forth in full in the margin.[4]

---

[1] Ex. 14.

[2] The actual cost of title insurance related to O'Neill's property may or may not have been $156.30. As the County explains in exhibit 10:
"6/11/90 **156.30** — Title Report Cost. Total billing from Puget Sound Title Company was $10,159.50. Total number of reports received was 65.
"**10159.50/65 = 156.30**"

[3] Ex. 2.

[4] The County's only explanation is in exhibit 10, which states in pertinent part:
"6/11/90 **93.70** — Administrative Cost.
"a. preparation/review of Title Report order (personnel + computer time)
"b. delivery of t/r to title co. (personnel + automobile charge)
"c. preparation/delivery of exhibits to PA (personnel + automobile charge)
"d. preparation of lawsuit by PA's office (personnel + computer time)
"e. filing of lawsuit by PA (personnel cost)
"f. recording fees charged by auditors office
"g. delivery/retrieval of documents from printers office (personnel + automobile charge)
"h. printing charges
"i. certified mailing (personnel + postage)
"j. preparation/review/posting of actual charges to customer accounts (personnel + computer time)
"k. daily account monitoring for possible payments/charges, updating of lien amounts."

Also on June 11, the County filed a lien against O'Neill's residence for $444.52.[5] The lien included the bill from April 2 ($148.30), penalties and interest accruing after the April bill ($6.45), June charges for April and May service ($38.90 plus tax of $.78),[6] alleged title report costs ($156.30), and miscellaneous alleged foreclosure costs ($93.70).

On June 15, 1990, the County filed a "Notice and Summons for Lien Foreclosure" and a "Complaint for Lien Foreclosure".[7] The County did not incur a filing fee. *See* former RCW 84.64.050 (Laws of 1989, ch. 378, § 37).

On June 19, the County mailed the summons and complaint to O'Neill's residence. Meanwhile, on June 18, O'Neill mailed a payment of $153.81 to the County. Because the charges billed on June 4 were not yet delinquent, this payment would have brought her account to within a dollar of being current, but for the $250 in alleged costs that had been added on June 11.

On July 6, O'Neill mailed another payment of $50. By then, the charges billed on June 4 were delinquent, and the County had added another $5.28 in interest and penalties related to earlier overdue bills. On July 6, then, O'Neill would have had a credit balance of −$4.10, but for the $250 in costs that had been added on June 11.

---

[5]The County had filed an earlier lien on September 28, 1989, but that lien is immaterial to the case. It was superseded by the June 11 lien, and, in any event, the County never sued to foreclose it. The County's complaint filed June 15, 1990, sought foreclosure of the June 11, 1990, lien, and the County's amended complaint filed July 25, 1990, sought foreclosure of the July 24, 1990, amended lien.

[6]The County acknowledges that the lien should not have included the June 4 bill, which was not yet overdue. O'Neill contends the lien was void because of that defect. We do not reach O'Neill's contention.

[7]Clerk's Papers, at 3, 6. Relying on RCW 36.94.150, which provides that a county can sue on a sewer lien "[u]pon the expiration of sixty days after the attachment of the lien", O'Neill contends that the County's complaint was premature, and that it should have been dismissed because of that defect. We agree the complaint was premature — it was filed on the fourth day of the 60-day waiting period — but we do not reach the legal effect, if any, of that deficiency. We note in passing that the 60-day waiting period seems designed to do exactly what it did here — give the ratepayer 60 days to bring her account current.

On July 24, the County added another $50 in "foreclosure administrative cost" to O'Neill's account.[8] Its explanation of this $50 is set forth in the margin.[9]

The next day, July 25, the County filed an amended lien for $295.99. This reflected the June 11 lien ($444.52), plus the interest and penalty added on July 6 ($5.28), plus the administrative cost added on July 24 ($50), less O'Neill's June 18 and July 6 payments ($203.81). On July 24, then, O'Neill would have had a credit balance of −$4.01 but for the $300 in costs added on June 11 and July 24.

On August 13, 1990, the County filed an amended complaint. It prayed for judgment declaring that O'Neill's sewer service account was delinquent, and for judgment foreclosing its lien.

Between August 13, 1990, and October 31, 1991, the County charged O'Neill another $910.34 in "foreclosure administrative costs".[10] This brought total "foreclosure costs" to $1,210.34. O'Neill paid amounts approximating the County's bills for

---

[8]Ex. 2.

[9]Again, the County's only explanation is in exhibit 10, which states in pertinent part:

"7/24/90 **50.00 — Administrative** Cost
    "a. retrieval of t/r from title company (personnel + automobile)
    "b. review of t/r and preparation of exhibits (personnel + computer time)
    "c. preparation of lawsuit amendment by PA's office (personnel + computer time)
    "d. filing of lawsuit by PA's office (personnel)
    "e. recording fees charged by auditors office
    "f. delivery/retrieval of documents from printers
    "g. printing charges
    "h. certified mailing (personnel + postage)
    "i. preparation/review/posting of actual charges to customer accounts (personnel + computer time)
    "j. daily account monitoring for possible payments/charges, updating of lien amounts"

[10]In exhibit 10, the County explains these charges as follows:

"2/4/91 **82.61** — Publication Cost. Bill from Eatonville Dispatch was $35.53. Bill from the TNT was $460.08. Total publication charges were $495.61. Total number of accounts were 6.
    "495.61/6 = 82.61"
"4/26/91 **299.44** — Publication Cost. Bill from Eatonville Dispatch was $57.20. Bill from the TNT was 541.68. Total publication charges were $598.88.

sewer service, but refused to pay foreclosure costs on the ground the County lacked authority to assess them. The County filed two more amended liens, one on September 6, 1991, and another on October 31, 1991.

A bench trial was held on November 1, 1991. Representing herself, O'Neill contended, among other things, that she had paid her account in full by remitting $153.81 on June 18, and that she was not "responsible for the litigation costs of the other party, that's their expense, at least the attorneys keep telling me that".[11] The trial court ruled for the County, and written judgment was entered on January 10, 1992. The judgment was for $1,251.71. In real terms, $1,210.34 of this amount was for alleged foreclosure costs.[12]

---

Total number of accounts were 2.

"10/30/91 **20.00** — Legal Messenger Service Cost. Bill from ABC Legal Messengers Inc. for October 24, 1991 service to Constance O'neil [sic].
"**20.00**

"10/31/91 **$508.29** — Administrative Cost. This charge represents hourly wages and overhead for administrative personnel to prepare for litigation with the defendant, Constance O'neil [sic] for the time period September 1, 1991 through October 31, 1991. The calculations are based on hourly salaries (including overhead) for actual time worked solely on this case. These costs do not include attorneys fees.

"1. Cindy McClelland, Acctg Asst. II, Pay Rate: $18.14/hour
Tuesday 9/3/91 — 4 hours = 72.56
Wednesday 9/4/91 — 3.5 hours = 63.49
**Total Charge for Cindy McClelland: $136.05**

"2. Ruth Quesnel, Billing Supervisor, Pay Rate: $21.51/hour
Tuesday 9/3/91 — 1 hour = 21.51
Thursday 9/5/91 — 3 hours = 64.53
Friday 9/6/91 — 3.75 hours = 80.66
Wednesday 10/30/91 — 1.5 hours = 32.27
Thursday 10/31/91 — 1 hour = 21.51
**Total Charge for Ruth Quesnel: $220.48**

"3. John Leyden, Collections Manager, Pay Rate: $25.5/hour
Friday 9/6/91 — 3.75 hours = 95.81
Wednesday 10/30/91 — 1 hour = 25.55
**Total Charge for John Leyden: $121.36**

"4. Pat Macaluso, Legal Assistant III, Pay Rate: $17. 37/hour
Friday 9/6/91 — 1.75 = 30.40
**Total Charge for Pat Macaluso: $30.40**"

[11]Report of Proceedings, at 97.

[12]The County contends that it had the right to allocate almost all of O'Neill's payments to foreclosure costs; that it did so; and thus that the judgment was

## I

The dispositive issue is whether the County had authority to assess $250 in costs on June 11, 1990. We hold it did not.

Like any creditor, a county cannot charge its sewer customers arbitrarily. Rather, each of its charges must have a contractual or other legal basis. Here, the County does not claim it was authorized to charge foreclosure costs by virtue of a contract with O'Neill. However, it does claim it was authorized to charge foreclosure costs by virtue of (A) RCW 36.94.150 and (B) Pierce County Code (PCC) 13.13.045. Based on these provisions, it "asserts that it may lawfully lien and certify delinquencies as to sewer utility service accounts that include both costs actually expended for a foreclosure suit, and internal personnel costs and administrative overhead".[13]

## A

RCW 36.94.140 provides in part:

> Every county, in the operation of a system of sewerage . . ., shall have . . . authority . . . to fix, alter, regulate and control the rates and charges for the service to those to whom such county service is available, and to levy charges for connection to such system.

RCW 36.94.150 provides:

> All counties operating a system of sewerage and/or water shall have a lien for delinquent connection charges and charges for the availability of sewerage and/or water service, together with interest . . . .. Penalties of not more than ten percent of the amount due may be imposed in case of failure to pay the charges at times fixed by resolution. The lien shall be for all charges, interest, and penalties and shall attach to the premises to which the services were available. The lien shall be superior to all other liens and encumbrances, except general taxes and local and special assessments of the county.
>
> The county department established in RCW 36.94.120 shall certify periodically the delinquencies to the treasurer of the county at which time the lien shall attach.
>
> Upon the expiration of sixty days after the attachment of the lien, the county may bring suit in foreclosure by civil action

---

mainly for overdue service charges. In view of our holding that the County lacked authority to charge foreclosure costs, this argument fails.

[13]Br. of Resp't, at 18.

in the superior court of the county where the property is located. In addition to the costs and disbursements provided by statute, the court may allow the county a reasonable attorney's fee. The lien shall be foreclosed in the same manner as the foreclosure of real property tax liens.

The County argues that the last sentence of RCW 36.94.150 says that a sewer lien shall be foreclosed in the same manner as a tax lien; that a tax lien can include "taxes, interest and costs", RCW 84.64.050-.060; and thus that a sewer lien can include "costs". O'Neill responds that the last sentence of RCW 36.94.150 does not mean that the contents of a sewer lien shall be the same as the contents of a tax lien; rather, she says, it means only that a sewer lien shall be foreclosed according to the same procedures as a tax lien.

■ If the County's position were right, the last sentence of RCW 36.94.150 would provide that a sewer lien shall be for "taxes, interest and costs". At the same time, the third sentence of RCW 36.94.150 would provide that a sewer lien "shall be for charges, interest and penalties". These provisions are not consistent, and the Legislature would not have intended both to describe the contents of the same lien. Thus, we hold that the last sentence of RCW 36.94.150 prescribes the manner in which a sewer lien shall be foreclosed, but not the contents of such a lien.

Next, the County argues that the last sentence of RCW 36.94.150 incorporates the third paragraph of RCW 84.64.050;[14] that the third paragraph of RCW 84.64.050 provides that a tax lien can include "costs"; and thus that a sewer lien can include "costs". It is apparent, however, that the third paragraph of RCW 84.64.050 does not deal with the contents of a sewer lien. Rather, it presumes that the contents of a sewer lien are otherwise proper, then authorizes a county treasurer to include such contents in a certificate of delinquency related to overdue taxes.

---

[14]The third paragraph of former RCW 84.64.050 provides:

"The county treasurer may include in the certificate of delinquency any assessments which are due on the property and are the responsibility of the county treasurer to collect. For purposes of this chapter, 'taxes, interest, and costs' include any assessments which are so included by the county treasurer."

Next, the County argues that the last sentence of RCW 36.94.150 incorporates the proviso that is part of RCW 84.64.050;[15] that such proviso authorizes it to include title insurance costs in a sewer lien; and thus that it was authorized to include at least title insurance costs in the sewer liens filed against O'Neill's residence. The proviso referred to, however, became effective on July 24, 1991.[16] Laws of 1991, ch. 245, § 25. Thus, it did not authorize the County to add title costs to O'Neill's account on June 11, 1990.[17]

■ ■ In the end, we read RCW 36.94.140 and RCW 36.94.150 according to their terms. They allow the County to bill for connection and service charges; they allow the County to lien for delinquent connection and service charges, plus interest and penalties; and they allow the court in a foreclosure suit to award the County "costs and disbursements provided by statute", plus a reasonable attorney's fee. They do not allow a county to charge foreclosure costs, or to in-

---

[15]The proviso states:

"Provided, that prior to the sale of the property, the treasurer shall order or conduct a title search of the property to be sold to determine the legal description of the property to be sold and the record title holder, . . .. Such title search shall be included in the costs of foreclosure."

[16]The County fails to note that the proviso was not in effect at the times in issue here, and it provides no argument or authority showing that the proviso should be applied retroactively.

[17]Nor is the County aided by the sixth paragraph of Laws of 1984, ch. 220, § 18, which appears to be the predecessor of the proviso upon which the County relies. Codified as a part of former RCW 84.64.030(3), that paragraph was in effect in 1990, but was repealed in 1991. RCW 84.64.030(3), *repealed by* Laws of 1991, ch. 245, § 42. It provided that "[a]ny time after the expiration of three years from the original date of delinquency of any tax included in a certificate of delinquency, the holder of any certificate of delinquency may give notice and summons to the owner of the property". Former RCW 84.64.030 (Laws of 1984, ch. 220, § 18). "Thereafter when any owner of real property . . . seeks to redeem . . ., the treasurer shall . . . include . . . costs as a part of the redemption", and "[c]osts incurred for a title search . . . shall be included." Former RCW 84.64.030(3). Even assuming that this statute applied to sewer liens as well as tax liens (a proposition we doubt but need not rule on), it still did not apply to the lien filed against O'Neill for at least two reasons: (1) Three years did not expire between her initial delinquency in August 1989 and the filing of the sewer lien in June 1990, and (2) the County did not provide her with the required notice and summons.

clude such costs in a sewer lien. *Cf. Dean v. McFarland*, 81 Wn.2d 215, 219-20, 500 P.2d 1244, 74 A.L.R.3d 378 (1972) (lien is creature of statute and must be strictly construed).

## B

The County argues that PCC 13.13.045 authorized it to include costs of foreclosure in its sewer liens. To the extent pertinent here, that ordinance provides that a sewer lien shall include "charges, penalties, interest, and foreclosure costs".[18] O'Neill responds that an ordinance cannot legislate on a subject preempted by state statute, and that the contents of a sewer lien are preempted by state statute. Thus, she says, PCC 13.13.045 is invalid insofar as it purports to include foreclosure costs within sewer liens.

When the State enacts a general law on a particular subject, its political subdivisions are preempted from also doing so, unless there is room for concurrent jurisdiction. *Lenci v. Seattle*, 63 Wn.2d 664, 669, 388 P.2d 926 (1964); *Seattle v. Shin*, 50 Wn. App. 218, 748 P.2d 643, *review denied*, 110 Wn.2d 1025 (1988). Whether there is room for concurrent jurisdiction depends on the Legislature's intent. *Lenci*, at 669. If the Legislature is silent about its intent, resort must be had to the statute, its purposes, and the circumstances on which it was intended to operate. *Lenci*, at 669-70.

In RCW 36.94.150, the Legislature provided that a sewer lien would include charges, interest and penalties. By negative implication, it provided that a sewer lien would *not* include a host of other items, including foreclosure costs.

---

[18]PCC 13.13.045 provides:

"A. Service charges on properties or structures for which service is available become delinquent if not paid when due.

"B. The Department shall certify all delinquent charges, penalties, interest, and foreclosure costs thereon to the Pierce County Assessor-Treasurer when such charges have been delinquent for sixty (60) days but may so certify such delinquencies earlier. The Department may later amend these certifications when appropriate.

"C. Upon such certification, such charges, penalties, interest, and foreclosure costs shall automatically become a lien on such property and shall be enforceable as provided in RCW 38.94.150 or succeeding statutes. An amended certification shall likewise automatically take effect."

Additionally, the Legislature provided in RCW 36.94.150 that a sewer lien would be superior to most other liens and encumbrances. If a county or other political subdivision could expand a sewer lien by adding foreclosure costs, or by adding other similar items, it could reduce the priority of, and thus the benefit of, all sorts of other liens and encumbrances — for example, mechanics' liens, mortgages, and deeds of trust. It seems clear that the Legislature did not intend for counties to have this power. Thus, we conclude that only the Legislature can specify the contents of a sewer lien, and that PCC 13.13.045 is invalid insofar as it purports to provide that a sewer lien may include foreclosure costs.[19]

## II

Disregarding the County's alleged foreclosure costs, O'Neill was paid up on July 6, 1990. On that date, she had a credit balance of −$4.10.

■■ A lien is extinguished when paid. *Wenatchee Prod. Credit Ass'n v. Pacific Fruit & Produce Co.,* 199 Wash. 651, 662, 92 P.2d 883 (1939); 53 C.J.S. *Liens* § 26, at 484-85. Moreover, we think a lien cannot be amended after it has been extinguished. Thus, the lien filed on June 11, 1990, was extinguished on July 6, 1990, and the County's subsequent attempts to amend it were ineffectual.[20]

---

[19]The County also relies on two miscellaneous authorities. It argues that *League v. Texas,* 184 U.S. 156, 46 L. Ed. 478, 22 S. Ct. 475 (1902), somehow supports the inclusion of foreclosure costs in a Washington sewer lien. There, a Texas statute allowed a landowner to redeem property subject to a tax lien, but only if the landowner paid the state's foreclosure costs. Because the landowner was not required to pay, but rather was permitted to pay as a condition to redemption, the Supreme Court held that the statute could be applied retroactively without violating the federal constitution. *League* has no pertinence to the issue here, which is whether a Washington county has authority to include foreclosure costs in a Washington sewer lien.

The County also argues that an Attorney General's opinion, AGO 16 (1976), supports the inclusion of foreclosure costs in a sewer lien. The question addressed in that opinion was whether foreclosure costs could be included in a tax lien. The controlling statutes, RCW 84.56.070 and former RCW 84.64.030, provided that "costs" could be included in a tax lien. RCW 36.94.150 does not. Because of this difference, the opinion is unpersuasive with regard to RCW 36.94.150.

[20]We decline to consider the County's attempted amendments as new liens, because the County did not start over with a 60-day waiting period and new lawsuit. *See* RCW 36.94.150.

The June 11 lien having been extinguished before trial, the County had no lien at the time of trial. Thus, it was not entitled to foreclosure, and its amended complaint should have been dismissed with respect to O'Neill.

Reversed with directions to dismiss the amended complaint as to O'Neill.

HOUGHTON, A.C.J., and ALEXANDER, J. Pro Tem., concur.