2000 ND 133

Iola RUSCHEINSKY, Director, Grant County Social Service Board, as assignee for Joely Will, f/k/a Joely Hauck, and Joely Will, f/k/a Joely Hauck, Plaintiffs and Appellants,

v.

Timothy L. ULRICH, Defendant and Appellee.

No. 990388.

Supreme Court of North Dakota.

June 29, 2000.

Lloyd C. Suhr, Special Assistant State's Attorney, Child Support Enforcement, Bismarck, N.D., for plaintiffs and appellants.

Timothy Ulrich, pro se, Elgin, N.D., no appearance.

NEUMANN, Justice.

[¶ 1] Iola Ruscheinsky, Grant County Social Services Board Director, as assignee for Joely Will, formerly known as Joely Hauck, and Joely Will, formerly known as Joely Hauck ("Social Services") appeal from the trial court's judgment finding Timothy Ulrich's child support arrears totaled $733.10. We reverse and remand.

[¶ 2] On August 1, 1983, the trial court entered a default paternity judgment against Ulrich. The judgment awarded Social Services $1,502.10 for recovery of public assistance expended for the child and ordered Ulrich to pay a $150 per month child support obligation beginning August 10, 1983. On July 19, 1993, Social Services renewed the 1983 judgment for public assistance with a remaining balance

of $883.10, but did not enter or renew any other judgments.

[¶ 3] On August 27, 1998, and October 4, 1999, the trial court held order to show cause hearings because Ulrich failed to pay his child support arrearage. Social Services introduced a certified copy of the State Disbursement Unit ledger ("SDU ledger") showing a $4,733.10 child support arrearage. The trial court found the total arrearage was $733.10, the balance due on the renewed public assistance judgment, minus Ulrich's subsequent payments. Social Services moved for reconsideration. The trial court denied the motion. Social Services appeals.

[¶ 4] Social Services argues the trial court's finding that Ulrich's arrears totaled $733.10 was clearly erroneous as it was based on an erroneous view of the law and was not supported by the record. Social Services submitted an SDU ledger showing the child support arrears totaled $4,733.10, and now argues none of the arrears have been barred by the statute of limitations or canceled.

[¶ 5] A trial court's findings of fact will not be set aside unless clearly erroneous. N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence there is a definite and firm conviction a mistake has been made. *Fox v. Fox*, 1999 ND 68, ¶ 7, 592 N.W.2d 541.

[¶ 6] To determine whether the trial court erred, we must review the statutory history of child support orders and judgments for child support. Before 1987, a due and unpaid child support order did not constitute a judgment until it was adjudicated through a motion proceeding or separate action. *Fuson v. Schaible*, 494 N.W.2d 593, 595, 597 (N.D.1992). In 1987, the North Dakota Legislative Assembly enacted N.D.C.C. § 14–08.1–05, providing that any child support order is a judgment by operation of law on and after the date it is due and unpaid, and becomes recordable in the judgment book under Rule 58, N.D.R.Civ.P.1987 N.D. Sess. Laws ch. 181, § 1. The statute became effective March 23, 1987; it was not retroactive. 1987 N.D. Sess. Laws ch. 181, § 9; *Baranyk v. McDowell*, 442 N.W.2d 423, 424 (N.D. 1989). The requirement for entry under Rule 58, N.D.R.Civ.P., was enacted to avoid an automatic docketing of the judgment. *Hearing on S.B. 2432 Before the Human Services and Veteran Affairs Committee*, 50th N.D. Legis. Sess. (January 29, 1987) (testimony of Blaine L. Nordwall, N.D. Dept. of Human Services). Automatic docketing would have created "an onerous imposition of numerous monthly docket entries for the State's clerks of court" and the need to find the "multitudinous docket entries in each and every real estate transaction." *Id.*

[¶ 7] In 1997, the legislature amended N.D.C.C. § 14–08.1–05, providing any child support order constitutes a judgment by operation of law on and after the date it is due and unpaid, whether accrued before or after the effective date of the amendment. 1997 N.D. Sess. Laws ch. 404, § 5. The amendment also replaced the requirement that the judgment be entered under Rule 58, N.D.R.Civ.P., with a requirement that the order "must be entered in the judgment docket, upon filing by the judgment creditor or the judgment creditor's assignee of a written request accompanied by a verified statement of arrearage or certified copy of the payment records of the clerk of district court maintained under section 14–09–08.1 and an affidavit of identification of the judgment debtor." *Id.* This amendment was intended "to permit timely enforcement of the judgment" and address "problems with the current practice of some clerks and judges which require advance notice to the delinquent obligor before permitting enforcement of the judgment." *Hearing on H.B. 1226 Before the Human Services Committee*, 55th N.D. Legis. Sess. (January 21, 1997) (testimony of William Strate, Director of Child Support Enforcement, N.D. Dept. of Hu-

man Services). The amendment became effective July 1, 1997. 1997 N.D. Sess. Laws ch. 404, § 87.

[¶ 8] In 1999, the legislature again amended N.D.C.C. § 14–08.1–05, providing: "[t]he due and unpaid payments and any judgment entered in the judgment docket pursuant to this section are not subject to the statutes of limitations provided in chapter 28–01, nor may such judgment be canceled pursuant to section 28–20–35." [1] 1999 N.D. Sess. Laws ch. 140, § 1. This amendment was intended to "allow collection of unpaid child support throughout the life of the person who fails to pay his or her support and then through the probate of that person's estate." *Hearing on S.B. 2288 Before the Human Services Committee*, 56th N.D. Legis. Sess. (January 27, 1999) (testimony of Senator Wayne Stenehjem). The amendment became effective April 2, 1999. 1999 N.D. Sess. Laws ch. 140, § 2.

[¶ 9] Ordered, due and unpaid child support, therefore, falls into one of four historical categories: (1) before March 23, 1987, ordered child support that was due and unpaid did not constitute a judgment until adjudicated through a motion proceeding or separate action, and was subject to the statute of limitations and to cancellation under N.D.C.C. § 28–20–35; (2) ordered support that became due after March 23, 1987, constituted a judgment by operation of law, was recordable in the judgment book under Rule 58, N.D.R.Civ. P., and was subject to the statute of limitations and cancellation; (3) after July 1, 1997, all ordered child support, regardless of when it became due, constituted a judgment by operation of law upon filing a written request and documentation, and was subject to the statute of limitations and cancellation; and (4) after April 2, 1999, all ordered support, regardless of when it became due and unpaid, constituted a judgment by operation of law upon filing a written request and documentation,

and the statute of limitations and cancellation were expressly inapplicable.

[¶ 10] Prior to March 23, 1987, Ulrich's ordered, due and unpaid child support did not constitute a judgment because Social Services had not initiated an enforcement motion proceeding or separate action to reduce the unpaid obligations to judgment. Ulrich's obligations that became due and unpaid after March 23, 1987, did constitute judgments by operation of law under N.D.C.C. § 14–08.1–05. And, finally, on July 1, 1997, all his ordered, due and unpaid child support, regardless of when it had become due, constituted a judgment by operation of law. However, simply because Ulrich's obligations constituted judgments by operation of law does not necessarily mean Social Services can now collect on the judgments. We must still determine whether any of the claims have been barred by the statute of limitations or canceled by N.D.C.C. § 28–20–35.

[¶ 11] Generally, a child support claim is "[a]n action upon a judgment or decree of any court of the United States or of any state or territory within the United States" and subject to a ten-year statute of limitations. *See* N.D.C.C. § 28–01–15; *Fuson*, at 597. The limitation period begins when the duty to support terminates, not on each individual payment's due date. *Fuson*, at 598–99, Levine, J., dissenting (dissenting opinion became the majority opinion on the statute of limitations issue); *see id.* at 594. Ulrich's child support duty terminated when the child reached the age of majority on October 18, 1989, and the limitations period normally would have run on October 18, 1999. The latest order to show cause hearing in this case was held on October 4, 1999, before the statute of limitations would have run. Additionally, after April 2, 1999, ordered, due and unpaid child support was exempted from the statute of limitations under N.D.C.C. § 14–08.1–05(1)(a). *See* 1999 N.D. Sess.

---

1. N.D.C.C. § 28–20–35 provides for cancellation of unrenewed judgments ten years after entry, and renewed judgments twenty years after entry.

Laws ch. 140, §§ 1, 2. Therefore, none of Ulrich's child support obligations are barred by the statute of limitations.

█ [¶ 12] Non-renewed judgments are canceled ten years after their entry. N.D.C.C. § 28–20–35. "After ten years after the entry of a judgment that has not been renewed, or after twenty years after the entry of a judgment that has been renewed, the judgment must be canceled." *Id.* Judgment entry under N.D.C.C. § 14–08.1–05 was performed under Rule 58, N.D.R.Civ.P., until the July 1, 1997, amendment when the entry procedure was changed to require only the filing of a written request and the listed documentation. 1997 N.D. Sess. Laws ch. 404, § 5; 1987 N.D. Sess. Laws ch. 181, §§ 1. Here, the original $1,502.10 judgment for public assistance was entered on August 1, 1983, and the $883.10 remaining balance was renewed on July 19, 1993. We cannot find any entered or renewed judgments for child support in the record. Section 28–20–35, N.D.C.C., therefore, would apply only to the renewed 1983 judgment for public assistance. That judgment was renewed within the ten-year period and it has not been twenty years since entry. Thus, the renewed 1983 judgment has not been canceled and, on the trial record, there are no child support judgments entered that could have been canceled. Cancellation under N.D.C.C. § 28–20–35 also will not apply to any judgments for child support that may be entered in the future. N.D.C.C. § 14–08.1–05(1)(a); 1999 N.D. Sess. Laws ch. 140, §§ 1, 2 (eliminating application of N.D.C.C. § 28–20–35 to all child support order judgments, effective April 2, 1999).

█ [¶ 13] The trial court's finding that the arrearage totaled $733.10 was clearly erroneous. The statute of limitations under N.D.C.C. § 28–01–15 has not barred recovery of ordered support that is due and unpaid, and the support was not canceled under N.D.C.C. § 28–20–35. The certified SDU ledger showing Ulrich owed a child support arrearage of $4,733.10 was prima facie evidence of the state records maintained by the SDU registry. N.D.C.C. § 14–08.1–08. Ulrich did not introduce any evidence rebutting this prima facie evidence. Normally, that should have been sufficient proof of a child support arrearage separate and apart from the 1983 judgment for public assistance. In this case, however, appellants' trial counsel, introducing the SDU ledger, stated: "The total obligation in this case is an arrearage of $4,733. This reflects a balance of fifteen hundred two dollar judgment that was entered, I believe, it was in 1983. This was the original judgment, plus there was $1,915 owed in back support to the obligee in this case, and $2,818." This statement suggests the arrearage is comprised of three different items totaling $4,733, one of which is the 1983 judgment. In fact, the SDU ledger makes no clear reference to the 1983 judgment. The ledger contains only two numbers, $1,915 and $2,818.10, which total the arrearage balance $4,733.10. That arrearage balance is clearly labeled "child support" on page 1 of the ledger. The two numbers, $1,915 and $2,818.10, are found on page 2 of the ledger and are cryptically labeled "TRANCODE DE" and "TYPE CA." Without counsel's confusing reference to the 1983 judgment it would have been reasonable for the trial court to construe the ledger as showing nothing but child support arrearage, even though the reason for the two separate figures on page 2 is unexplained. However, the existence of two separate unexplained figures on page 2 of the ledger, combined with trial counsel's confusing suggestion that the balance of the 1983 judgment is somehow incorporated in the arrearage balance, effectively impeached appellants' own exhibit.

[¶ 14] In light of the confusion caused by appellants' exhibit with its unexplained entries, and counsel's statement that the balance due on the 1983 judgment was somehow incorporated in those entries, it is

easy to understand how the trial court's focus was diverted from the child support arrearage appellants were seeking to collect, to the balance due on the 1983 judgment for public assistance.

[¶ 15] We reverse and remand the case for an evidentiary hearing to determine the composition of the $4,733.10 arrearage, and for further proceedings consistent with this opinion.

[¶ 16] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.