2003 ND 120

**Carol Hope SMITH, n/k/a Carol Graves, Plaintiff and Appellee**

v.

**Leo John BAUMGARTNER, Defendant and Appellant.**

**No. 20020323.**

Supreme Court of North Dakota.

July 16, 2003.

Rehearing Denied Aug. 20, 2003.

Donavin L. Grenz, Linton, for defendant and appellant.

Sheila K. Keller, Child Support Enforcement, Bismarck, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Leo Baumgartner appeals from the October 30, 2002, Memorandum Opinion and Order concluding the arrearage of $23,667.86 is a valid obligation of Baumgartner. We affirm.

I

[¶ 2] The marriage of Baumgartner and Carol Smith, now known as Carol Graves, was dissolved by a Colorado district court decree dated July 25, 1975. The decree awarded custody of the couple's two minor children to Smith and ordered Baumgartner to pay $200 per month in child support. When Baumgartner failed to pay support according to the Colorado decree, Smith brought a motion for a judgment for the unpaid support arrearages. On June 11, 1984, the Colorado court entered a $21,000 money judgment against Baumgartner for the child support arrearages which had accrued between August 1, 1975, and May 9, 1984.

[¶ 3] After the money judgment was entered, Baumgartner continued to default on his child support payments. On May 24, 1985, a hearing was held to show cause because Baumgartner failed to pay the court-ordered child support. As a result of this hearing, Baumgartner and Smith entered into a stipulation, whereby Baumgartner acknowledged the Colorado court's $21,000 money judgment against him for child support arrearages and agreed to pay monthly toward the judgment until the full principal balance was satisfied. Baumgartner also agreed to pay $1,300 for the child support that had accrued between June 1, 1984, and June 1, 1985. Finally, he agreed to pay $100 per month for the current support of the one remaining daughter who had not yet reached the age of majority. Baumgartner paid the $1,300 and began making the $100 payments each month toward his child support. With the exception of one payment in August of 1987, Baumgartner stopped making the $100 payments after June of 1986. Baumgartner never made any payment toward the $21,000 money judgment.

[¶ 4] On April 17, 2002, the Bismarck Regional Child Support Enforcement Unit filed a Notice of Registration of Foreign Support Order in North Dakota, following the filing of a petition by the state of Colorado, seeking to enforce payment of Baumgartner's arrearages under the current enforcement statutes known as the Uniform Interstate Family Support Act ("UIFSA"). See N.D.C.C. ch. 14–12.2. Baumgartner resisted the enforcement of the foreign support order, claiming the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA"), rather than UIFSA, should be applied because RURESA was the enforcement statute in effect when his support obligations terminated in 1985 and 1987. See N.D.C.C. ch. 14–12.1 (repealed 1995). After a hearing, the trial court issued its Memorandum Opinion and Order on October 30, 2002, in which it applied UIFSA, found Baumgartner was obligated to pay the child support arrearages of $23,667.86, and ordered payment of $200 per month toward the obligation. The court based its decision on the fact that UIFSA was enacted before the ten-year statute of limitations mandated by RURESA had run. Therefore, it reasoned UIFSA could be applied retroactively.

[¶ 5] Baumgartner appeals from the Memorandum Opinion and Order. Baumgartner claims under RURESA, the enforcement of all his child support obligations would be barred by North Dakota's ten-year statute of limitations on judgments. He further argues the trial court erred in calculating his child

support arrearages. He asserts that under UIFSA, all but $6,667.86 of his child support obligations would be barred by Colorado's twenty-year statute of limitations. We conclude that UIFSA applies to the enforcement of Baumgartner's child support arrearages and that none of Baumgartner's child support arrearages are barred by the statute of limitations.

## II

[¶ 6] The issue in this case is whether RURESA or UIFSA should be applied to Smith's child support enforcement proceedings. The North Dakota Legislature repealed RURESA effective August 1, 1995. In its place, the legislature adopted UIFSA in chapter 14–12.2, N.D.C.C. RURESA and UIFSA have different choice of law provisions, the application of which result in the use of different statutes of limitation.

[¶ 7] RURESA contained a choice of law provision stating:

Duties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

N.D.C.C. § 14–12.1–07 (repealed 1995). As applied to the facts of this case, RURESA's choice of law provision requires that North Dakota law be applied to enforce Baumgartner's child support arrearages. At the time Baumgartner's child support obligations accrued, child support judgments were subject to cancellation ten years after the entry of judgment. *See* N.D.C.C. § 28–20–35; *see also Ruscheinsky v. Ulrich,* 2000 ND 133, ¶ 9, 612 N.W.2d 283. They were also subject to

the ten-year statute of limitations under N.D.C.C. § 28–01–15(1), which begins when the duty to support terminates. *Ruscheinsky,* at ¶ 11. Therefore, under RURESA, Baumgartner would not be obligated to pay the arrearages.

[¶ 8] UIFSA's choice of law provision, in proceedings for child support arrearages, allows the court to apply either the enforcing state's statute of limitations or the issuing state's statute of limitations, whichever is longer. *See* N.D.C.C. § 14–12.2–38(2). In this case, the enforcing state, North Dakota would apply a ten-year statute of limitations to Baumgartner's arrearages, as discussed above. *See* N.D.C.C. § 28–20–35; N.D.C.C. § 28–01–15(1). In the issuing state of Colorado, the applicable statute of limitations for child support arrearages is the twenty-year period under Colo.Rev.Stat. § 13–52–102(2)(a), for execution on judgments of any kind. *See In re the Marriage of Morris,* 32 P.3d 625, 626 (Colo.Ct.App.2001). Therefore, under UIFSA, Colorado's twenty-year statute of limitations would apply to this case because it is the longer of the two, and Baumgartner would be obligated to pay the arrearages.

## III

[¶ 9] Baumgartner argues UIFSA cannot be applied retroactively. This is a question of law. In determining whether UIFSA can be applied retroactively to this case, we must consider N.D.C.C. § 1–02–10 which provides, "[n]o part of this code is retroactive unless it is expressly declared to be so." We, however, said in *State v. Davenport,* that it is not necessary that a statute expressly declare it is to operate retroactively, because an intent of retroactive application can be implied. *See* 536 N.W.2d 686, 688 (N.D.1995) (citing *In re W.M.V.,* 268 N.W.2d 781, 783–84 (N.D. 1978)).

[¶ 10]   The dissent is critical of our reliance on *Davenport.* The position the dissent takes in both this case and in *Davenport* was rejected by the majority of this Court. *See Davenport,* 536 N.W.2d at 692 (VandeWalle, C.J., concurring and dissenting). To the extent *Reiling v. Bhattacharyya,* 276 N.W.2d 237 (N.D.1979), stood for the position that there must be an express declaration that the statute is retroactive, it was overruled by *Davenport.*

[¶ 11]   We have stated: "A statute is employed retroactively when it is applied to a cause of action that arose prior to the effective date of the statute." *State v. Cummings,* 386 N.W.2d 468, 471 (N.D. 1986). "[L]aws which confer benefits are often excepted from the general rule against retroactive application." *Id.* The issue in this case is whether the judgments for child support arrearages have expired or been canceled and, thus, whether they can be enforced. The general purpose of UIFSA is to ensure more efficient enforcement of these judgments. The judgments in this case were valid judgments under the law of the issuing state of Colorado when they were filed in North Dakota for enforcement. At that time, UIFSA was in effect in North Dakota.

[¶ 12]   In *Davenport,* we quoted *Landgraf v. USI Film Products,* 511 U.S. 244, 269–70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (citations omitted) stating:

A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have "sound . . . instinct[s]," and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

From this language, *Davenport* concluded, "[t]hus it is questionable whether application of an amended statute of limitations to actions accruing before its adoption is "retroactivity" in the legal sense." *Davenport,* at 689 n. 1. The effect of applying UIFSA in this case is to lengthen the period before a judgment for child support arrearages expires and can no longer be enforced.

[¶ 13]   Finally, the dissent states the *Davenport* opinion relies on *In re W.M.V.,* 268 N.W.2d 781 (N.D.1978). While *W.M.V.* is cited, *Davenport* relies heavily on *Cummings* for the position that N.D.C.C. § 1–02–10 is but a canon of construction, which we need not resort to if we are able to rationally infer from the statute itself the legislature's intention. In *Cummings,* we held that an exception must be made to the general rule of *Reiling* in the case of ameliorating penal legislation. *See Cummings,* 386 N.W.2d at 472. The exception was carved out, however, based on general rules of construction emphasizing that the goal of statutory interpretation is to ascertain and effectuate legislative intent. *See id.* at 471–72. The *Davenport* decision is built on the rules of construction established in *W.M.V.; Cummings;* and *Caldis v. Board of County Comm'rs,* 279 N.W.2d 665 (N.D.1979).

[¶ 14] Section 1–02–10, N.D.C.C., is a rule of statutory construction which is "subservient to the main rule that the intent and purpose of the legislature must be given effect." *Davenport,* at 688. We concluded in *Davenport,* "there is no need to resort to NDCC § 1–02–10 to discern legislative intent if we are able to rationally infer from other sources that the legislature intended retroactive application of the statute." *Id.* at 689. In this case, a review of the legislative history of North Dakota's enactment of UIFSA allows us to rationally infer the legislature intended retroactive application of the act.

[¶ 15] UIFSA is a uniform law first approved by the National Conference of Commissioners on Uniform State Laws in 1992[1] to govern the establishment, enforcement, and modification of child and spousal support orders when more than one state is involved. *See* 9 U.L.A. 1B at 393. UIFSA superceded two then-existing uniform interstate support acts, the Uniform Reciprocal Enforcement of Support Act and RURESA. *See id.* at 393. By 1998, every state had enacted some form of UIFSA.[2] *See id.* at Supp. p. 44.

[¶ 16] As previously stated, North Dakota enacted UIFSA in 1995,[3] codified at N.D.C.C. ch. 14–12.2. *See* 1995 N.D. Sess. Laws ch. 157, § 3. At the same time, RURESA, which had been North Dakota's interstate support collection mechanism since 1969, was repealed. *See id.* at § 4. The legislative history indicates UIFSA was enacted to "completely replace[ ]"

RURESA and to make the current law "much more comprehensive and make[ ] the process much more efficient." *Hearing on S.B. 2069 Before the House Standing Comm.,* 54th N.D. Legis. Sess. (Feb. 27, 1995) (testimony of Vonette Richter, Attorney for the Legislative Council). In addition, when enacting UIFSA, the legislature's intent was that UIFSA be applied and construed to effectuate its general purpose of ensuring uniform application of child support enforcement procedures among the states adopting it. *See* 1997 N.D. Sess. Laws ch. 152, § 17. The Court of Appeals of Utah, discussing the general purpose of UIFSA, stated:

> In fact, Congress required that all states adopt UIFSA by January 1, 1998, to further national uniformity in the enforcement of child support orders. This policy of ensuring that foreign child support orders are uniformly recognized and enforced further supports our determination that UIFSA should be applied retroactively. In retroactively applying UIFSA, we comport with several other jurisdictions.

*State Dep't of Human Svcs. v. Jacoby,* 1999 UT App 52, ¶ 14, 975 P.2d 939 (citations omitted); *see also Welsher v. Rager,* 127 N.C.App. 521, 491 S.E.2d 661, 664–65 (1997). All of the judgments entered against Baumgartner were valid under Colorado law when they were registered in North Dakota. The United States Constitution requires states to give full faith and credit to "the public Acts, Records, and

---

**1.** In 1996 and again in 2001, the National Conference of Commissioners on Uniform State Laws revised portions of UIFSA. However, neither set of amendments altered UIFSA's original basic principles. *See* 9 U.L.A. 1B at 236; 9 U.L.A. 1B at Supp. pp. 43–44.

**2.** The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 conditioned each state's eligibility for federal child

support enforcement funds on the state's enactment of UIFSA. *See* 42 U.S.C. § 666(f) (2003).

**3.** North Dakota's UIFSA was amended in 1997, to reflect the changes the National Conference of Commissioners on Uniform State Laws had made to UIFSA in 1996. *See* 1997 N.D. Sess. Laws ch. 152.

judicial Proceedings of every other State." U.S. Const. art. IV, § 1.

[¶ 17] We conclude our interpretation is consistent with North Dakota state decisions, with other jurisdictions addressing the issue of retroactivity of UIFSA, and that UIFSA applies to all proceedings to enforce foreign orders and judgments for child support arrearages which are registered in North Dakota.

## IV

[¶ 18] Baumgartner asserts that even if UIFSA is retroactively applied, under the twenty-year statute of limitations, he would owe a child support obligation of $6,667.86, rather than the $23,667.86 ordered by the trial court. We disagree.

[¶ 19] Baumgartner's child support arrearages that accrued from August 1, 1975, to May 9, 1984, were reduced to a $21,000 money judgment in *Colorado*, entered on June 11, 1984. Under applicable Colorado law, this money judgment can be enforced at any time within twenty years from the entry of the judgment. *See* Colo.Rev.Stat. § 13–52–102(2)(a). Therefore, under Colorado law, the $21,000 money judgment does not expire until June 11, 2004, and is enforceable.

[¶ 20] Similarly, each individual child support payment after May 9, 1984, by operation of Colorado law, became a final money judgment when it was due and unpaid. *See* Colo.Rev.Stat. § 14–10–122(1)(c); *In re the Marriage of Nussbeck*, 974 P.2d 493, 499 (Colo.1999). These individual judgments, which accrued from June of 1984 until November of 1987 when the younger child was emancipated, are subject to Colorado's twenty-year statute of limitations on judgments. *See* Colo. Rev.Stat. § 13–52–102(2)(a). Therefore, none of Baumgartner's child support arrearages have yet expired under the applicable twenty-year statute of limitations.

## V

[¶ 21] At the trial court level, Baumgartner argued his support obligation ended when each of his daughters reached the age of eighteen, rather than the age of nineteen. The trial court concluded under Colorado law, Baumgartner's support obligation did not end until each daughter's nineteenth birthday. *See* Colo.Rev.Stat. § 14–10–115(1.5)(a). Baumgartner has not argued this issue on appeal, and we deem it abandoned. *See Haugenoe v. Bambrick*, 2003 ND 92, ¶ 14, 663 N.W.2d 175.

[¶ 22] We affirm the trial court's October 30, 2002, Memorandum Opinion and Order finding Baumgartner responsible for $23,667.86 in child support arrearages.

[¶ 23] WILLIAM A. NEUMANN and CAROL RONNING KAPSNER, concur.

DALE V. SANDSTROM, J.

I concur in the result.

VANDE WALLE, Chief Justice, dissenting.

[¶ 24] I respectfully dissent. The majority opinion, although of somewhat limited effect because of the 1999 Amendment to N.D.C.C. § 14–08.1–05, providing that child support judgments are not to be cancelled, *see Ruscheinsky v. Ulrich*, 2000 ND 133, ¶ 9, 612 N.W.2d 283, relies on *State v. Davenport*, 536 N.W.2d 686 (N.D. 1995) to reach its conclusion that UIFSA is to be applied retroactively. In *Davenport*, a majority of the court, relying on *In re W.M.V.*, 268 N.W.2d 781 (N.D.1978), concluded a statute can be applied retroactively if there is an implied intent to apply it retroactively.

[¶ 25]· I dissented in *Davenport,* as did Justice Beryl Levine, because the majority in that case relied on *W.M.V.* and ignored *Reiling v. Bhattacharyya,* 276 N.W.2d 237 (N.D.1979), which held that in view of N.D.C.C. § 1–02–10, which orders that no part of the Code is retroactive unless it is especially declared to be so, all statutes, substantive or procedural, are to be applied prospectively unless the Legislature clearly expresses they are to be applied retroactively. In *Reiling,* we reviewed prior case law, noting that while substantive statutes have not been applied retroactively without a clear expression of legislative intent to do so, *Id.* at 238–39, the issue of retroactivity of procedural statutes "has received different interpretations in the past." *Id.* at 240. In adopting a narrow interpretation of N.D.C.C. § 1–02–10, which would make it applicable to substantive and procedural statutes, the *Reiling* court stated:

> A narrow interpretation of § 1–02–10, N.D.C.C., clearly presents the better rule. In enacting the statute the legislature intended to have no statute apply retroactively unless it specifically provides that it is to apply retroactively. By giving § 1–02–10, N.D.C.C., a narrow interpretation in this case, *the legislature will be given notice that it must specifically state that a statute is to apply retroactively if the legislature desires it to apply retroactively.*

*Id.* at 240 (emphasis added)(footnote omitted). Thus, *Reiling,* relying on N.D.C.C. § 1–02–10, establishes a presumption that a statute is not to be applied retroactively in the absence of a specific legislative statement to the contrary.

[¶ 26] *Reiling* was decided in 1979, but today, because of the mischief of the *Davenport* opinion, the majority continues to find legislative intent by implication, in this case from decisions in other jurisdic-tions which applied UIFSA retroactively. That implied intent is a far cry from specific statements referred to in *Reiling.*

[¶ 27] In truth, it appears the majority has abandoned the *Reiling* requirement and I fear that the Court will, in the future, be looking in corners and under rocks to find by implication the express intent required by N.D.C.C. § 1–02–10 to apply a statute retroactively.

[¶ 28] I would reverse the decision of the district court.

[¶ 29] Gerald W. Vande Walle