2007 ND 119

**Joan MANN, Ken Danks d/b/a TEK Industries, Tracy Wilkie, Christa Monette, and other persons similarly situated, Plaintiffs and Appellants**

v.

**NORTH DAKOTA TAX COMMISSIONER, Cory Fong, Defendant and Appellee**

and

**North Dakota Treasurer, Kelly Schmidt, Defendant.**

**No. 20060366.**

Supreme Court of North Dakota.

July 25, 2007.

Vance Gillette (argued), Minot, ND, for plaintiffs and appellants.

Daniel Lucian Rouse (argued) and Donnita Ann Wald (appeared), Special Assistant Attorneys General, Tax Department, Bismarck, ND; and Robert W. Wirtz (on brief), Special Assistant Attorney General, Bismarck, ND, for defendants and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Joan Mann, Ken Danks, doing business as TEK Industries, Tracy Wilkie, and Christa Monette ("plaintiffs") appealed from an order denying reconsideration, and from an underlying judgment denying their motion to declare the state fuel tax refund process unlawful, denying their request for class certification, and granting their motion for summary judgment to the extent the court found a six year statute of limitations applies. We conclude the statutory refund process is not unlawful, the district court did not abuse its discretion in denying class certification, and the court did not abuse its discretion in denying the plaintiffs' request for attorney's fees. We modify the statute of limitations look-back period for the plaintiffs' refund claims, and we affirm the judgment as modified.

I

[¶ 2] The plaintiffs are Native Americans. Mann is a member of the Three Affiliated Tribes, owns Mann Enterprises, and lives on the Fort Berthold Indian Reservation. Danks is also a member of the Three Affiliated Tribes, owns TEK Industries, and lives on the Fort Berthold Indian Reservation. Wilkie and Monette are members of the Turtle Mountain Band of Chippewa Indians and reside on the Turtle Mountain Indian Reservation.

[¶ 3] In August 2003, the plaintiffs sued the State under federal and state law, seeking a declaration that it is illegal for the State to impose a motor vehicle fuel tax under N.D.C.C. ch. 57–43.1 on fuel they purchased on their respective reservations and seeking a refund of the taxes they already paid. They also requested the district court certify the action as a class action. The plaintiffs sought declaratory and injunctive relief, requesting a permanent injunction barring imposition of the motor vehicle fuels tax on their reser-

vations. The State moved to dismiss, arguing the fuels tax could lawfully be imposed and collected on the reservations under the Hayden–Cartwright Act, 4 U.S.C. § 104.

[¶ 4] In January 2004, the district court rejected the State's argument and declared the fuels tax imposed under N.D.C.C. § 57–43.1–02 was illegally imposed on Native Americans who reside on North Dakota Indian reservations and purchase motor vehicle fuel on reservation lands. The court granted a permanent injunction prohibiting the collection of the illegal fuels tax. The district court dismissed the plaintiffs' federal claims and dismissed, without prejudice, all of the plaintiffs from the action except Danks because he had claimed a refund of taxes paid from the State and had complied with N.D.C.C. § 32–12–03. The court reserved the questions on certification and refunds until a later date.

[¶ 5] The State asked the court to reconsider the order and also sought a stay of the order pending appeal. The plaintiffs also moved for reconsideration challenging the dismissal of the federal claims and the dismissal of all the plaintiffs except Danks. The plaintiffs reinstituted their claims for refunds and for certification of a class action. In April 2004, the district court denied the State's motion for reconsideration, but granted the motion for a stay pending appeal. The court also denied the plaintiffs' motion for reconsideration and postponed determination of refunds and class certification. The court consolidated its rulings into "findings of fact, conclusions of law and order for judgment," but a judgment was not entered.

[¶ 6] The plaintiffs appealed and the State cross-appealed from the various orders. In February 2005, we dismissed the appeals concluding that in the absence of a final judgment we did not have jurisdiction. *Mann v. North Dakota Tax Comm'r*, 2005 ND 36, ¶¶ 13, 19, 692 N.W.2d 490. We also declined to exercise our supervisory authority. *Id.* at ¶ 24. But we said:

> The district court's ruling that the Hayden–Cartwright Act does not authorize imposition of the state motor vehicle fuels tax on Indian reservations is in accord with every federal and state court decision that has addressed the issue. The risk that the district court committed error in its construction of the Hayden–Cartwight (sic) Act is negligible.
>
> The plaintiffs have conceded that the injunction prohibits collection of the motor vehicle fuels tax only from enrolled Native Americans on their own respective Indian reservations. Although the feasibility of enforcing the injunction prohibiting collection of the motor vehicle fuels tax from Native Americans on their own reservations is questionable, the plaintiffs have indicated they would be satisfied if a refund procedure similar to the procedure provided in N.D.C.C. ch. 57–43.1 were made available to them. We urge the Legislature to address this problem.

*Id.* at ¶¶ 22–23 (citations omitted).

[¶ 7] During the 2005 legislative session, the legislature enacted N.D.C.C. § 57–43.1–03.2, a refund provision, which provides:

> 1. A native American may file a claim with the tax commissioner for a refund of motor vehicle fuel taxes paid by that person under this chapter or special fuel taxes paid under chapter 57–43.2 if the motor vehicle fuel or special fuel was purchased from a retail fuel dealer located on the Indian reservation where the native American is an enrolled member and the fuel was delivered to the native American on that reservation. The re-

fund provisions of this chapter apply to refund claims made under this section. 2. A fuels tax refund reserve fund is created as a special fund in the state treasury. The tax commissioner shall deposit in that fund such amounts from motor vehicle fuel tax and special fuel tax collections as the attorney general determines necessary to be expended for refunds to which native American government entities may be entitled under qualifying circumstances and conditions determined by the attorney general. There is appropriated as a continuing appropriation out of funds set aside under this subsection so much of the funds as the attorney general determines is necessary to meet the expenditures authorized under this subsection and such funds may be expended for that purpose.

2005 N.D. Sess. Laws ch. 40, § 13. Section 57–43.1–03.2, N.D.C.C., by its terms, specifically applies to all qualifying fuel purchases made after December 31, 2004. 2005 N.D. Sess. Laws ch. 40, § 16. The legislature also included a statement of its intent regarding the interpretation of the statute:

A new section to Senate Bill No. 2012, as approved by the fifty-ninth legislative assembly, is created and enacted as follows: "LEGISLATIVE INTENT REGARDING INTERPRETATION. Sections 13[, § 57–43.1–03.2,] and 16[, providing for an effective date,] of this Act may not be construed to preclude claims for motor vehicle and special fuel tax refunds by tribal members or tribal entities for taxes on purchases made before January 1, 2005."

2005 N.D. Sess. Laws ch. 15, § 39.

[¶ 8] In June 2005, the plaintiffs filed an amended motion for summary judgment and class action, questioning whether and how far back the State could be held liable for fuel tax refunds, requesting class certification, and requesting attorney's fees. The plaintiffs also moved to declare the refund process unlawful claiming it violates equal protection and due process.

[¶ 9] The district court denied the plaintiffs' claim that the N.D.C.C. ch. 57–43.1 refund process is unlawful, concluding the process does not violate due process and equal protection because the refund process provides claimants with a meaningful opportunity to secure relief for taxes already paid. The court granted the plaintiffs' motion for summary judgment to the extent the court found a six-year statute of limitations applies to retrospective applications for refunds and to the extent the court found interest was payable on refunds. The court denied the plaintiffs' request for class certification after deciding a class action was not necessary to ensure a fair and efficient adjudication of the controversy. The court did not take any action on the plaintiffs' request for attorney's fees. The plaintiffs moved for reconsideration arguing the statutory refund process could not be applied retroactively and claiming they were entitled to attorney's fees. The court denied the plaintiffs' motion for reconsideration and the plaintiffs' request for attorney's fees and a final judgment was entered.

II

[¶ 10] The plaintiffs argue the statutory fuel tax refund process contained in N.D.C.C. ch. 57–43.1 violates due process because the refund process does not allow a claimant to request a hearing to challenge a denial. They also argue the refund process is imposed on Native American claimants in a manner that violates equal protection by denying a refund claim unless the claimant provides original receipts with fuel tax listed as a separate item and requiring claims to be for fuel

purchased for use in non-licensed equipment.

[¶ 11] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law." Payment of a tax constitutes a deprivation of property, and therefore the state must provide either predeprivation or postdeprivation procedural safeguards to satisfy the requirements of the Due Process Clause. *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 36, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990); *Service Oil, Inc. v. State*, 479 N.W.2d 815, 821 (N.D.1992). Due process requires a state to provide meaningful backward-looking relief to rectify any unconstitutional deprivation that occurs when a state requires a taxpayer to pay a tax without an opportunity to challenge whether the tax is illegal before payment. *McKesson*, 496 U.S. at 31, 110 S.Ct. 2238. A state has flexibility in responding to a determination that it imposed an unlawful tax, so long as the taxpayer is provided with "an opportunity to contest the validity of the tax and a 'clear and certain remedy' designed to render the opportunity meaningful by preventing any permanent unlawful deprivation of property." *Id.* at 39–40, 110 S.Ct. 2238.

[¶ 12] The district court found the refund process provides claimants with a meaningful opportunity to secure postdeprivation relief for taxes unlawfully collected and the refund process was reasonable and was not unduly burdensome.

[¶ 13] Native Americans are entitled to a refund of fuel taxes paid under N.D.C.C. chs. 57–43.1 and 57–43.2 if the fuel was purchased from a retail fuel dealer located on the Indian reservation where the Native American is an enrolled member. N.D.C.C. § 57–43.1–03.2. Native Americans may claim refunds for fuel taxes paid using the procedure set out in N.D.C.C. ch. 57–43.1. N.D.C.C. § 57–43.1–03.2. In order to claim a refund, the claimant must submit a claim on a form provided by the tax commissioner. N.D.C.C. § 57–43.1–04. The claimant must submit the original invoices or sales receipts, which include the seller's name and address, the date the fuel was purchased, the type of product, the number of gallons of fuel purchased, and the name of the claimant. N.D.C.C. § 57–43.1–04. Although N.D.C.C. § 57–43.1–04 requires the fuel not be used in a licensed motor vehicle, when N.D.C.C. § 57–43.1–03.2, which applies to all Native American fuel tax refunds, is read together with N.D.C.C. § 57–43.1–04, the provision of the statute about licensed motor vehicles does not apply to Native American claimants requesting refunds under N.D.C.C. § 57–43.1–03.2. Section 57–43.1–04, N.D.C.C., also requires the claimant provide the original invoice or sales receipt with state tax listed as a separate item, but if that receipt is not available, the claimant must provide a certified statement from the fuel seller stating the receipts include tax in the price. We take judicial notice the 2007 Legislative Assembly amended and reenacted N.D.C.C. § 57–43.1–04 to remove the requirement that tax be listed as a separate item on receipts submitted for refund claims. 2007 N.D. Sess. Laws ch. 538, § 1. The new version of N.D.C.C. § 57–43.1–04 becomes effective on August 1, 2007, and applies to all refund claims filed after that date. If the claimant no longer has the original receipts he may substitute copies of the receipts if he provides a separate affidavit completed by the fuel seller on a form provided by the tax commissioner, or the claimant may submit a certified history prepared by the fuel seller providing the required details of each fuel purchase.

N.D.C.C. § 57–43.1–04. Within thirty days of the receipt of a claim, the tax commissioner must examine the claim and a check will be issued for the amount due unless there are any discrepancies. N.D.C.C. § 57–43.1–07.

[¶ 14] The refund claimant may protest the denial of a refund under rules adopted by the tax commissioner and in the manner provided in N.D.C.C. ch. 28–32. N.D.C.C. § 57–43.1–17(7). The claimant is entitled to a hearing to contest the denial of his refund claim. N.D.C.C. § 28–32–21. The agency must issue a final order. N.D.C.C. § 28–32–39. If the agency's final order denies the refund claim, the claimant may petition for reconsideration or may appeal to the district court. N.D.C.C. §§ 28–32–40 and 28–32–42. The judgment of the district court in an appeal from the agency's order may be reviewed by the Supreme Court on appeal. N.D.C.C. § 28–32–49.

[¶ 15] Native Americans who have been unlawfully deprived of their property by paying fuel taxes under N.D.C.C. chs. 57–43.1 and 57–43.2 are entitled to meaningful backward-looking relief to rectify the unlawful deprivation. *See McKesson,* 496 U.S. at 31, 110 S.Ct. 2238. We conclude the statutory refund process contained in N.D.C.C. ch. 57–43.1 provides meaningful backward-looking relief with a clear and certain remedy to rectify the unlawful deprivation, and therefore complies with due process requirements.

[¶ 16] Citing *Reich v. Collins,* 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994), the plaintiffs also claim the State engaged in a "bait and switch" by holding out a "clear and certain" postdeprivation remedy, N.D.C.C. § 57–43.1–32, and then after the taxes are paid declared that no such remedy existed. But this case is different from *Reich.* In *Reich,* a Georgia tax scheme exempting retirement benefits paid by the state from state personal income tax but not exempting retirement benefits paid by the Federal Government was found unconstitutional. *Id.* at 108, 115 S.Ct. 547. Reich sued Georgia in state court seeking a refund based on a Georgia statute which stated a taxpayer was entitled to a refund of all taxes illegally assessed and collected. *Id.* at 109, 115 S.Ct. 547. The Georgia Supreme Court refused to grant a refund after finding the refund statute did not apply, and concluding any predeprivation procedures available were ample safeguard against unlawful deprivations. *Id.* at 109–10, 115 S.Ct. 547. The United States Supreme Court concluded Georgia engaged in a "bait and switch" by holding out what appeared to be a "clear and certain" postdeprivation remedy, the refund statute, and then after the disputed tax was paid declared the remedy did not exist and any predeprivation procedures available to challenge the tax were the exclusive remedy. *Id.* at 111, 115 S.Ct. 547. The Court remanded for the provision of meaningful backward-looking relief consistent with due process and *McKesson. Id.* at 114, 115 S.Ct. 547.

[¶ 17] A "bait and switch" has not occurred in this case. Taxpayers are entitled to a refund of an illegal or erroneously collected fuels tax under N.D.C.C. § 57–43.1–32, which provides:

> If any taxes, penalties, or interest imposed by this chapter have been erroneously or illegally collected from any person, the commissioner may permit that person to take credit against a subsequent tax return for the amount of the erroneous or illegal overpayment. In the alternative, the commissioner shall present a voucher to the office of management and budget for payment of the amount erroneously or illegally collected and a warrant-check must be prepared by that office drawn on the state trea-

surer payable to that person. The refund must be paid to the person from undistributed funds received from the tax imposed by this chapter and any credit or refund may not be approved or paid unless it is an amount which is in excess of five dollars.

The State has not argued the plaintiffs are not entitled to a refund, rather the State argues the plaintiffs must comply with the statutory refund procedure set out in N.D.C.C. ch. 57–43.1. As stated above, we conclude the plaintiffs and other Native Americans who purchase fuel on their reservations and pay fuel taxes have been provided with meaningful backward-looking relief with a clear and certain remedy to obtain refunds of unlawful taxes and prevent any permanent unlawful deprivation of property. But we also caution that an overly strict construction or technical application of the refund requirements in N.D.C.C. § 57–43.1–04 may deprive claimants of a clear and certain postdeprivation remedy resulting in a "bait and switch" and violating due process.

[¶ 18] Moreover, this is the remedy the plaintiffs requested. The plaintiffs' complaint states, "plaintiffs request relief as follows: ... 3. to require the defendants to set up a speedy refund process which allows documents or oral testimony to establish the amount of fuel purchased or taxes paid; ...." When this case was previously argued before this Court, the plaintiffs' attorney was questioned about whether his clients would be satisfied with a statutory refund process and he said they would. In *Mann*, 2005 ND 36, ¶ 23, 692 N.W.2d 490, we said, "[a]lthough the feasibility of enforcing the injunction prohibiting collection of the motor vehicle fuels tax from Native Americans on their own reservations is questionable, the plaintiffs have indicated they would be satisfied if a refund procedure similar to the procedure provided in N.D.C.C. ch. 57–43.1 were

made available to them." The plaintiffs requested a statutory refund provision, similar to that provided in N.D.C.C. ch. 57–43.1. They received the remedy they requested, and we conclude that remedy does not violate due process.

[¶ 19] The plaintiffs also claim the refund process violates their equal protection rights because refunds are only allowed for fuel used in non-licensed vehicles and claims are denied unless the original receipts list tax as a separate item. The plaintiffs claim receipts with tax as a separate item do not exist, and most Native American's refund claims are for fuel used in a licensed vehicle.

[¶ 20] As we said in our discussion of the due process issue, we have taken judicial notice of the amendment to N.D.C.C. § 57–43.1–04, removing the requirement that receipts for fuel purchases list tax as a separate item. Although that amendment does not become effective until August 1, 2007, N.D.C.C. § 57–43.1–04 already provides that a claimant may submit a certified statement from the fuel seller stating the receipts include tax in the price. As for the plaintiffs' claims that Native Americans are not allowed refunds on fuel purchased for use in a licensed vehicle, when N.D.C.C. § 57–43.1–03.2, which applies to all Native American fuel refunds, is read together with N.D.C.C. § 57–43.1–04, it is clear the requirement that the purchased fuel must be used in a non-licensed vehicle does not apply to Native Americans seeking refunds under N.D.C.C. § 57–43.1–03.2. We conclude the statutory refund process does not violate the plaintiffs' equal protection rights.

[¶ 21] We affirm the district court's decision finding the statutory refund process is lawful, complies with due process requirements, and does not violate the plaintiffs' equal protection rights.

## III

[¶ 22] The plaintiffs argue N.D.C.C. § 57–43.1–03.2, the Native American fuels tax refund provision, does not apply retroactively to claims for refunds of taxes paid prior to January 1, 2005, the effective date of the statute. They claim the language of the statute is clear, the statutory refund process only applies to fuel tax paid after January 1, 2005, and that N.D.C.C. § 57–43.1–32, the provision for erroneously or illegally collected taxes, applies.

[¶ 23] The district court addressed the retroactivity of the Native American fuel tax refund statute, N.D.C.C. § 57–43.1–03.2, and said:

> Given the Supreme Court's directive (in *Mann v. ND Tax Commissioner*) to the North Dakota Legislature, and bearing in mind what is set forth in the *Note* to newly-enacted N.D.C.C. 57–43.1–03.2, it appears that the Legislature intended to allow enrolled tribal members/tribal entities to obtain tax refunds for motor vehicle fuel purchases made *prior to the effective date of the statute.*

(Emphasis in the original). The court found the statutory refund process, contained in N.D.C.C. ch. 57–43.1, applies to all claims for fuel tax refunds by Native Americans, including refund claims for taxes paid before 2005. We agree.

[¶ 24] "'A statute is employed retroactively when it is applied to a cause of action that arose prior to the effective date of the statute.'" *Smith v. Baumgartner*, 2003 ND 120, ¶ 11, 665 N.W.2d 12 (quoting *State v. Cummings*, 386 N.W.2d 468, 471 (N.D.1986)). Generally, statutes are not applied retroactively unless we can rationally infer the legislature intended retroactive application of the statute. *Smith*, at ¶ 14.

[¶ 25] In this case the legislature's intent is clear, the note following the statute states, "'LEGISLATIVE INTENT REGARDING INTERPRETATION. [Section 57–43.1–03.2 and the effective date] of this Act may not be construed to preclude claims for motor vehicle and special fuel tax refunds by tribal members or tribal entities for taxes on purchases made before January 1, 2005.'" N.D.C.C. § 57–43.1–03.2. The legislature intended Native Americans to be able to claim refunds for all fuel taxes paid, including those paid before January 1, 2005, and to apply the statutory fuel tax refund process, provided in N.D.C.C. ch. 57–43.1, to those claims.

[¶ 26] The plaintiffs also asked the district court to decide what the statute of limitations was for refund claims. The State argued N.D.C.C. § 57–43.1–05 provides a specific statute of limitations for fuel tax refund claims, and states, "[a] refund claim must be filed, for all motor vehicle fuel purchases during a calendar year, on or after January first and before July first of the next year following the year during which the purchase was made, or the claim for refund is barred unless the commissioner grants an extension of time for cause." The court considered the relevant statutes and found the legislature intended to allow enrolled tribal members to obtain tax refunds for motor vehicle fuel purchases made prior to January 1, 2005, but concluded the legislative intent on how far back to allow claims was not clear. The court found a general six-year statute of limitations governing contract actions applies, under N.D.C.C. § 28–01–16(1), and Native Americans may claim refunds for taxes paid six years prior to January 1, 2005, the effective date of the statute allowing refunds.

[¶ 27] The State argues the district court erred in finding Native Americans could request refunds for six years prior to the enactment of the statute under

a contract-theory-based statute of limitations, because there are specific statutes of limitations set out in N.D.C.C. §§ 57–43.1–05 and 57–01–19 barring claims filed by individual Native Americans for all time periods prior to those specifically provided. Section 57–01–19, N.D.C.C., also enacted in 2005, provides:

> Notwithstanding any provision relating to claims for refund or credit of state taxes paid contained in title 57, any claim for a refund or credit of taxes paid based upon a claim that the tax or any provision thereof is unconstitutional under the federal or state constitution must be made within one hundred eighty days of the due date of the return or payment of the tax, whichever occurs first, for which the refund or credit is claimed. A claim for refund or credit of taxes paid before January 1, 2005, based upon a claim that the tax or any provision thereof is unconstitutional that is not filed with the commissioner before July 1, 2005, must be denied. This section does not apply to ad valorem property taxes.

But the State did not cross-appeal, and therefore it cannot challenge the court's findings and seek a more favorable result than it received from the district court. *See McCollum v. North Dakota Workers Comp. Bureau*, 1997 ND 163, ¶ 4 n. 3, 567 N.W.2d 811.

[¶ 28] The plaintiffs argue the court erred in finding the six-year statute of limitations restricted refunds to taxes paid on or after January 1, 1999. They claim the statute of limitations was tolled upon the commencement of the action, and therefore the look-back period begins six years from the date the suit was filed, September 22, 2003.

[¶ 29] A statute of limitations tolls while a suit is pending, including through the appeal. *See* N.D.C.C. § 28–05–10; *Finch v. Backes*, 491 N.W.2d 705, 707 (N.D.1992). The district court found the plaintiffs are entitled to a six-year look-back period to obtain fuel tax refunds, and we conclude the look-back period starts six years from when the suit was commenced. We therefore conclude the plaintiffs are entitled to refunds for fuel taxes paid after September 21, 1997, and we direct the judgment be modified accordingly.

## IV

[¶ 30] The plaintiffs argue the requirements to certify a class action under N.D.R.Civ.P. 23 were met and the district court erred in denying class certification. They claim the court erred in finding a class action was not necessary because the statutory refund process applies to claims for refunds of taxes paid prior to 2005 and is more appropriate to adjudicate Native Americans' claims for refunds.

[¶ 31] The district court has broad discretion in deciding whether to certify a class action under N.D.R.Civ.P. 23, and that decision will not be reversed on appeal unless the court abused its discretion. *Werlinger v. Champion Healthcare Corp.*, 1999 ND 173, ¶ 6, 598 N.W.2d 820. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *Id.*

[¶ 32] Four requirements must be met in order to certify a class action under N.D.R.Civ.P. 23:

1. The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable;

2. There is a question of law or fact common to the class;

3. A class action should be permitted for the fair and efficient adjudication of the controversy; and

4. The representative parties fairly and adequately will protect the interests of the class.

*Werlinger,* 1999 ND 173, ¶ 8, 598 N.W.2d 820.

[¶ 33] If the court finds the first two requirements have been met, it must decide whether a class action should be permitted for a fair and efficient adjudication of the controversy, and in doing so N.D.R.Civ.P. 23(c) lists thirteen factors for the court to consider. *Werlinger,* 1999 ND 173, ¶ 26, 598 N.W.2d 820. The factors will either weigh in favor or against certification. *Id.* The district court has broad discretion in weighing the factors and deciding whether a class action will provide a fair and efficient adjudication of the controversy. *Howe v. Microsoft Corp.,* 2003 ND 12, ¶ 9, 656 N.W.2d 285.

[¶ 34] The district court found the first and second requirements to certify a class action were arguably met, finding the class was sufficiently numerous and there was a common question of law or fact. In deciding whether a class action should be permitted for a fair and efficient adjudication of the controversy, the court considered the thirteen factors in N.D.R.Civ.P. 23(c), and said:

The Court finds that other means of adjudicating the claims and defenses are *not* impracticable or inefficient. In fact, because the very nature of the refund process dictates that each refund claimant prove his/her entitlement to a refund with information that only he/she possesses, other means (than a class action) of adjudicating the claims and defenses are *more* practical and efficient here.

. . . .

It has already been judicially determined that imposition of the State's fuel tax in connection with on-reservation purchases of motor fuel by enrolled Native Americans is illegal. With this threshold determination having been made, those persons seeking refunds of taxes already paid should logically be required to resort to the refund process specifically designed by the Legislature in response to *Mann v. N.D. Tax Commissioner,* 2005 ND 36, 692 N.W.2d 490.

. . . .

Recognizing that the Legislature has now provided enrolled Native Americans with what appears to be a very straightforward, relatively uncomplicated, method of making claims for refunds of fuel taxes erroneously paid, refund claimants should be able to process their individual claims with minimal difficulty—outside the court system.

(Emphasis in original). The court concluded a class action was not necessary for a fair and efficient adjudication of the controversy. The court found the members of the class have other means of adjudicating their claims, specifically the statutory refund process, and a class action was not the most appropriate means.

[¶ 35] We agree. The fuel tax has already been declared unlawful as applied to Native Americans who purchase fuel on the reservation they are a member of, and therefore the only part of the controversy left to resolve is how to refund the unlawfully collected taxes. Whether a class action is certified or individual claimants are required to file claims for refunds, the claimants must prove their individual damages. The legislature has provided a statutory refund process to allow individual claimants to get refunds. We have said this remedy is sufficient because it provides meaningful backward-looking relief with a clear and certain remedy to rectify

any unlawful deprivation that has occurred. The plaintiffs claim a class action is necessary for the fair and efficient adjudication of the controversy because the district court erred in finding the statutory refund process applies to claims for refunds of taxes paid prior to 2005, but we have already addressed this argument and held the statutory refund process applies to all Native American claims for fuel tax refunds, including claims for taxes paid prior to 2005. When the only remaining controversy is the remedy to be imposed and parties can obtain the same relief without class certification, then a class action may not be necessary for a fair and efficient adjudication. *See State v. Buckley Powder Co.*, 945 P.2d 841, 848 (Colo. 1997) (an adequate refund program is certainly relevant to a court's class certification decision when the only remaining controversy is the remedy to be imposed); *Buckley Powder Co. v. State*, 70 P.3d 547, 554–55 (Colo.Ct.App.2002) (affirming trial court's decision to grant class certification because refund program was not adequate). Because the statutory refund process applies to all Native American claims for fuel tax refunds and we have held the refund process is an adequate remedy, the statutory refund process is the more appropriate means to adjudicate refund claims.

[¶ 36] We conclude the district court did not abuse its discretion in denying class certification and finding a class action is not necessary for the fair and efficient adjudication of the controversy.

## V

[¶ 37] The plaintiffs also claim they are entitled to an award of attorney's fees under the common fund doctrine, and they argue the district court erred in denying their request.

[¶ 38] North Dakota applies the American rule that every litigant is responsible for his own attorney's fees, and therefore successful litigants are not entitled to recover attorney's fees unless authorized by statute or contract. *Deacon's Development, LLP v. Lamb*, 2006 ND 172, ¶ 11, 719 N.W.2d 379. The common fund doctrine is a recognized exception to the general principle that every litigant should bear his own attorney's fees, and the doctrine provides that a litigant who recovers a common fund for the benefit of others is entitled to reasonable attorney's fees from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). The purpose of the common fund doctrine is to spread out the attorney's fees proportionately among those who benefit from the suit, recognizing "that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* The common fund doctrine is consistent with the American rule because the expense is spread out among those who benefit from the suit rather than requiring the losing party to pay the cost of the litigation. *Id.* at 481, 100 S.Ct. 745.

[¶ 39] The district court concluded the common fund doctrine did not apply because:

1. The responsibility for paying any attorney's fees awarded by the Court will not be shared by all who benefit from the litigation. 2. Because each fuel tax refund claimant who qualifies for a refund will be paid the *full amount* to which he/she can prove he/she is entitled, plus interest, no portion of any recovery will be used to pay attorney's fees. 3. Any attorney's fees awarded by the Court will be paid by the State, not by those who will benefit from the litigation efforts of Plaintiffs' counsel.

The court denied the plaintiffs' request for attorney's fees.

[¶ 40] We conclude there is no statutory basis to award attorney's fees and the common fund doctrine does not apply. The purpose of the common fund doctrine would not be fulfilled in this case because the costs of the litigation would not be spread out equally among those who will benefit from the litigation, rather the attorney's fees awarded would be paid by the State. We affirm the denial of attorney's fees.

## VI

[¶ 41] We affirm the district court's judgment denying the plaintiffs' request for class certification, and denying their motion to declare the statutory refund process unlawful. We modify the statute of limitations look-back period for the plaintiffs' refund claims, we dissolve the permanent injunction, and we affirm the judgment as modified.

[¶ 42] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.